195 N.J. Super. 150 (1984)
478 A.2d 441
RONALD A. REISS, PLAINTIFF,
v.
SHERRY A. REISS, DEFENDANT.
Superior Court of New Jersey, Chancery Division Somerset County.
Decided January 23, 1984.
*154 W.S. Gerald Skey for plaintiff (Sterns, Herbert & Weinroth, attorneys).
Donald M. Lomurro for defendant (Lomurro, Eastman & Collins, attorneys).
IMBRIANI, J.S.C.
"Reimbursement alimony" received the approbation of the Supreme Court in a trilogy of cases including Mahoney v. Mahoney, 91 N.J. 488 (1982) which recognized the inequities arising when one spouse finances the education of the other, and then shortly after a professional degree is received, the parties divorce. When this occurs, Mahoney stated:
there will be circumstances where a supporting spouse should be reimbursed for the financial contributions he or she made to the spouse's successful professional training. [at 501]
Remaining to be resolved is precisely what expenses are to be reimbursed and how should they be calculated, appreciating as we must, that since the expenses were incurred many years earlier, records of actual expenses will generally be attenuated or unavailable.
Dr. & Mrs. Reiss met while both were freshman in college, got "pinned" in their sophomore year and married immediately following graduation. While in college they agreed to do everything possible to obtain a medical degree for the husband. She received a degree in mathematics, with a minor in computer sciences, and after graduation she postponed graduate school to become the sole wage earner while he devoted full time to his medical studies in Madrid, Spain, where they lived from September 1973 until he graduated in July 1978 when they returned to the United States.
In Spain they lived modestly in a one bedroom apartment in the center of town. In addition to the normal amenities of life they were able to attend movies and ballets, occasionally dine out and generally took two European trips each year to ski or sightsee. Once they went on a lengthy trip to Greece which *155 cost $2,000. In Spain the wife earned $3,500 in 1973, $11,000 in 1974, $14,000 in 1975, $16,000 in 1976, $20,000 in 1977 and $19,829 for the partial year 1978, or a total income of $84,329. During this entire period the husband earned nothing, although his father did send some money that was used to pay some of the tuition bills. They returned to the United States with no savings and minimal personal property.
Upon returning to the United States the wife began taking evening courses to obtain a Masters-in-Business-Administration (MBA) degree which she still has not received. She testified that in her opinion, without an MBA, she will be unable to advance further in her profession.
The husband completed his residency requirements, then became associated with a hospital medical group and recently entered into private practice. His earnings in 1978 were only $4,426, but increased substantially thereafter and will approximate $70,000 in 1983. The marriage which was a happy one in Spain, began to deteriorate after they returned to the United States and finally ruptured in June 1982 when they separated  which coincidentally was the day after the husband completed his residency. There were no children.
The wife seeks: 1. reimbursement alimony of $80,829, which represents her full income in Spain less $3,500 used for vacations; 2. rehabilitative alimony to enable her to obtain an MBA degree; and 3. permanent alimony because she believes he is now and will continue generating greater income than she.
She now has an excellent position as a staff manager at American Telephone and Telegraph Co. (AT & T) at an annual salary of $46,500. And it remains unclear whether she will continue evening courses or leave her employment to attend classes full time. In the latter event, even she admitted, it would be extremely difficult to match her present position and salary. She appeared very reluctant to resign and the court is satisfied that not only would it be unwise for her to do, but also highly unlikely that she would.
*156 Rehabilitative alimony which was sanctioned by Turner v. Turner, 158 N.J. Super. 313 (Ch.Div. 1978) and Lepis v. Lepis, 83 N.J. 139, 155, n. 9 (1980) is not applicable here. A spouse who earns $46,500 per year which enables her to live comparably, if not higher, than the standard of living to which she became accustomed during coverture does not need rehabilitation. While she is entitled to receive funds from the marital assets before distribution to enable her to complete her education, this does not constitute rehabilitative alimony. The two philosophies are dissimilar. The husband used marital assets to educate and advance himself and she is entitled to do likewise. While she would be entitled to rehabilitative alimony if she left AT & T to attend college full time (which would be in addition to the marital assets given to her to finance the costs thereof), since it is unlikely that she will leave AT & T, it is not needed here. At most she will need sufficient marital assets, before they are equitably distributed, to pay the costs of obtaining an MBA degree to the extent they are not paid by her employer.
And for the same reasons permanent alimony must also be denied. Her present annual income is greater than their joint incomes in every year from 1973 through 1980. Her 1983 income is almost double what she earned in 1980 and is sufficient to enable her to live in the same, if not better, style than the one to which she became accustomed during coverture.
Nonetheless, as clearly as rehabilitative and permanent alimony do not apply, the evidence in this case unmistakably requires an award for reimbursement alimony. Indeed, this is the precise type of case envisioned by Mahoney for such a remedy. The only valuable asset accumulated during the marriage through the joint efforts of the parties is the husband's increased earning capacity. It would be unfair and inequitable to hold this asset free of the claim by his wife. The husband took:
the benefits of his spouse's support in obtaining a professional degree, with the understanding that future benefits will accrue and inure to both them, and *157 [since] the marriage ... [has been] terminated without the supported spouse giving anything in return, an unfairness has occurred that calls for a remedy. [91 N.J. at 500]
The only genuine issue is in what amount. The husband argues that at best it should be the rather minimal education expenses at medical school (which he asserted were paid with his own savings and gifts from his father) and, perhaps, the estimated household expenses for rent and utilities in Spain which totalled $9,436.
The theories under which reimbursement alimony has been awarded vary widely. One group of states holds that a professional degree constitutes a "marital asset" subject to equitable distribution, which is valued by determining the present value of the "additional earnings" that could be expected during his or her lifetime. This sum could be substantial. For instance, a Massachusetts trial court recently determined that the present value of the additional earnings which a doctor in his 20's with an orthodontic degree would earn in his lifetime was $800,000. See "Whose Law Degree Is It?," National Law Journal, Nov. 28, 1983, at 1, 7. This philosophy was rejected by Mahoney because in the opinion of our Supreme Court:
[v]aluing a professional degree in the hands of any particular individual at the start of his or her career would involve a gamut of calculations that reduces [itself] to little more than guesswork. [at 497]
Another group of states denies any compensation to the working spouse on the theory that a marriage is not a business enterprise which entitles one party to reimbursement for services incurred over and above what would normally be expected of a spouse. They argue that a professional degree is not encompassed within the statutory concept of "property" which must be distributed at the time of a divorce because it cannot be traded, sold, or willed, is personal to the holder and is simply the "cumulative product of many years of previous education, combined with diligence and hard work." In re Marriage of Graham, 574 P.2d 75, 77 (Colo. 1978); In re Marriage of McManama, 272 Ind. 483, 399 N.E.2d 371 (1980).
*158 A third group of states, of which New Jersey is one, has taken a middle position and holds that the working spouse is entitled to reimbursement of expenses paid by him or her to obtain a professional degree for the other. The theory underpinning this philosophy is that if we were to limit recovery for such contributions to conventional alimony for support and maintenance, recoupment for such financial assistance will be nullified when alimony is denied or, even when allowed, would result in unfairness to the supporting spouse because it:
would force her to forego marriage and perhaps even be celibate for many years simply to realize a return on her investment and sacrifices. [Hubbard v. Hubbard, 603 P.2d 747, 752 (Okla. 1979)]
Accordingly, the last group of states has held that the most equitable solution is to allow the supporting spouse to recoup that which amounts to her investment in her spouse's education, which has been given the designation "reimbursement alimony." While not pertinent here it should be noted that the use of the description "alimony" may be somewhat of a misnomer. Even though described as alimony, would payment cease upon the remarriage of the supporting spouse or the death of either party, as would occur if this were conventional alimony? And what are the federal income tax consequences of such an award? Thus, the consequences of an award for reimbursement alimony are uncertain. But these are questions that will be left for another day.
What remains to be decided is the precise expenses for which reimbursement shall be allowed. Some states provide only for reimbursement of money spent for tuition, books and laboratory fees. Others also include sums spent for the student's living expenses. Mrs. Reiss seeks an award which will reimburse her not only for monies actually expended by her but also for the lower standard of living that she claims she endured while her unemployed spouse attended medical school and for her loss of the expectation of a future higher standard of living because of his anticipated enhanced earnings, which expectation has been dashed by the divorce. The husband *159 argues that any standard-of-living loss is simply one of those risks for which the law cannot and should not provide compensation. Using the language of Mahoney which rejects the theory that a professional degree constitutes a marital asset, he asserts that attempting to value loss of one's standard of living "would involve a gamut of calculations that reduces [itself] to little more than guesswork." (91 N.J. at 497). However, the question is not open in New Jersey because Mahoney held that:
an award that is referable to the spouse's monetary contributions to her partner's education significantly implicate basic considerations of marital support and standard of living. [at 501]
Thus, it is unnecessary to fix a separate award for the reduction of her standard of living, either past or future.
Mahoney established broad outlines for fashioning an award for reimbursement alimony. It shall consist of "all financial contributions toward the former spouse's education, including household expenses, educational costs, school travel expenses and any other contributions used by the supported spouse in obtaining his or her degree or license." At 501, 453 A.2d 527.
What was intended by the phrase "any other contributions"? It undoubtedly was intended to include such monetary expenses as medical expenses, clothing expenses, entertainment and leisure expenses, costs of toiletry and personal expenses and the like.
The difficulties of obtaining proof of day-to-day expenses during a period many years earlier are obvious. The wife attempts to overcome these obstacles by seeking the return of all the income she earned while in Spain, less what was used for vacations. She argues that since they left and returned to the United States, practically penniless, all of the income she earned in Spain was patently used for living and educational expenses. She excludes out-of-town vacation expenses, but includes funds spent for other forms of entertainment and leisure.
*160 In an unalloyed sense the cost of obtaining a professional degree should cover only tuition, books and college fees. However, few would deny that the true cost of an education should also include expenses for food, shelter, clothing, medical expenses, toiletry items and the like. But should it also include expenses for entertainment and leisure, such as movies, ballets, vacation trips, an occasional dinner out or a few nights at the local pub? Here we enter murky waters aware of the potentiality for excess if we allow reimbursement of such expenses.
Yet, few who have studied diligently, whether in high school or college, would dispute the desirability, if not the necessity, for some entertainment and leisure as a respite from the rigors of perpetual study to freshen the mind and "remove the cobwebs." Just as man does not live by bread alone, one does not become educated through studies alone. An educated person is the product of varied influences in uneven amounts which must all coalesce to obtain the desired end. Surely in this enlightened era a mature and rational assessment must conclude that some entertainment and leisure are reasonable and necessary to procure a professional degree. No evidence was offered by the husband that their expenses in Spain were excessive or unnecessary. Under these circumstances, it must be assumed that these parties lived on a tight budget and very little was wasted on extravagant or unnecessary items.
However, her claim for reimbursement of her own living expenses is neither fair nor reasonable. She is not entitled to be reimbursed for monies which she expended on herself. As stated in DeLa Rosa v. DeLa Rosa, 309 N.W.2d 755 (Minn. 1981):
the award should ... [be] limited to the monies expended by [the wife] for [her husband's] living expenses and any contributions made toward [her husband's] direct educational costs ... This has the effect of imputing one-half of the living expenses and all the educational expenses to the student spouse. [at 759]
The proofs here indicated that in addition to the wife's earnings the parties had the use of gifts received by the husband from his parents of $1,200, cash wedding gifts of $1,650, and Dr. *161 Reiss' premarital savings of $2,000, a total of $4,850. While no testimony was offered of the total costs of school, i.e., tuition, books and fees, it is fair to assume from the evidence that the $4,850 probably was equivalent to such costs. Therefore, the entire net earnings of the wife must have been used to pay their costs of living and under the circumstances of this case it would be fair to assume that each shared equally therein. Thus one-half of the $80,829 spent in Spain is attributable to the husband's expenses paid with earnings of the wife.
Did the husband's education cease upon graduation? To most it would, but not a medical student. Dr. Reiss' education continued until he completed his residency in June, 1982. During that period his income was reduced and he continued to have and use the benefits of his wife's income. The last few months of 1978 were not significant, but during the three full years from 1979 through 1981 the wife earned $75,206 and the husband $62,622. Prior to their separation in 1982, their incomes were almost comparable but his increased at a significantly higher rate thereafter, and the $70,000 he earned in 1983 will be 50% greater than hers. Patently, in subsequent years his potentiality for increases will be much greater than hers. Although difficult to quantify, the wife is entitled to be reimbursed for supplementing his income during residency when his income was less than a person with his skills and education would otherwise have earned.
Considering all of the circumstances of this case a fair award consists of reimbursing the wife for the one-half of her earnings in Spain used to maintain her husband, or $40,414.50, and one-half of the difference in their earnings during his residency in the calendar years 1979 through 1981, or $6,292.
We appreciate that the technique employed is unusual in that the common method of establishing what should be reimbursed is to ascertain what was actually expended not what was earned. But to apply such a method in a case such as this would be a venture in futility and result in denying a just claim *162 for lack of evidence. Where, as here, records are attenuated or unavailable the technique employed is fair and just.
Mrs. Reiss shall receive by way of reimbursement alimony the sum of $46,706.50 which shall be repaid at the monthly rate of $1,500, without interest. Any payments paid more than five days after the due date shall carry an interest rate of 12% from the due date.