200 N.J. Super. 122 (1984)
490 A.2d 378
RONALD A. REISS, PLAINTIFF,
v.
SHERRY A. REISS, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Somerset County.
Decided December 20, 1984.
*124 Lawrence F. Gilman, for plaintiff (Sterns, Hernert & Wienroth, attorneys).
Donald M. Lomurro, for defendant (Lomurro, Eastman & Collins, attorneys).
IMBRIANI, J.S.C.
This case tests the nature and character of "reimbursement alimony." Is it alimony or a marital asset that was equitably distributed or, perhaps, neither? The resolution has significant implications.
If it is alimony, payments are deductible for federal income tax purposes by the payer, 26 U.S.C.A. § 215, and includible in the gross income of the recipient, 26 U.S.C.A. § 71; but if it is a marital asset, it is neither deductible by the payer nor includible in the gross income of the recipient. If it is alimony, it will cease upon the death or remarriage of the recipient. N.J.S.A. 2A: 34-25; Schaeffer v. Schaeffer, 184 N.J. Super. 423, 428 (App.Div. 1982); Davis v. Davis, 184 N.J. Super. 430, 436 (App.Div. 1982). But if it is a marital asset, it will not. If it is alimony, it is not dischargeable in bankruptcy; but if a marital asset, it is. 11 U.S.C.A. § 523(a)(5).
A judgment of divorce entered January 26, 1984 granted the wife reimbursement alimony of $46,706.50 for financial contributions made by her, during the marriage, to her husband's professional education and training. See Reiss v. Reiss, 195 N.J. Super. 150, 478 A.2d 441 (Ch.Div. 1984). However, because there were virtually no marital assets, the husband was not required to pay the full amount at the time of the divorce, but was permitted to make monthly payments of $1,500, without *125 interest. Interest was disallowed because the award was based upon a gross income analysis (her net earnings were not available) and the court concluded that the equities balanced out by using her gross income figures, and foregoing interest.
This issue arose because the wife remarried less than two months after the divorce and has received only two monthly payments totalling $3,000. The husband contends that since the payments are described as "reimbursement alimony" it should be treated as alimony and cease upon her remarriage. She disagrees and argues that the award is not alimony per se, but, in fact, constitutes reimbursement for financial contributions she made for her husband's professional education, which should not cease upon her remarriage.
It is not clear how the phrase "reimbursement alimony" arose, but some believe it is a contradiction of terms and, indeed, a misnomer. Alimony is future "sustenance or support" for a divorced person payable by a former spouse, Black's Law Dictionary (5 ed. 1979) 67, and its award generally involves a determination of the future needs of the recipient and the future ability of the former spouse to pay. The past is relevant only to determine the standard of living to which the recipient became accustomed during coverture. On the other hand, "reimbursement" involves a determination of what was paid in the past. It has nothing to do with the future needs of the recipient or the future income of the payer. It is remarkably similar to the return of a financial advance or investment. Thus, the determination of alimony essentially looks to the future, while reimbursement looks to the past.
Mahoney v. Mahoney, 91 N.J. 488 (1982) said:
[t]he concept properly accords with the court's belief that regardless of the appropriateness of permanent alimony or the presence or absence of marital property to be equitably distributed, there will be circumstances where a supporting spouse should be reimbursed for the financial contributions he or she made to the spouse's successful professional training. [at 501]
This would suggest that it is neither alimony, nor a marital asset. However, Mahoney did recognize that its character and *126 nature was important but left its resolution to "future cases," id. at 503, n. 5 as did Reiss, supra, 195 N.J. Super. at 158.
Only two cases have been discovered by this court which directly addressed this problem. Hubbard v. Hubbard, 603 P. 2d 747 (Okla.Ct. 1979) which said it should not be treated as alimony because "it would force [the recipient] to forego marriage and perhaps even be celibate for many years simply to realize a return on her investment and sacrifices," id. at 752, and Washburn v. Washburn, 101 Wash.2d 168, 677 P.2d 152 (1984) which held that an award of $19,000 for reimbursement alimony "shall not terminate upon ... remarriage or death, so that her right to receive the full $19,000 may be preserved." Id. 677 P.2d at 160. On the other hand, one law review has suggested that it should be treated as alimony.
The Supreme Court of New Jersey should allow a modification when it appears, subsequent to the judgment, that the circumstances of the parties have greatly changed. For example, where the supporting spouse enjoys a tremendous windfall such as winning a lottery or gaining an inheritance and clearly does not even need restitutionary [sic] alimony the award can be modified downward. Conversely, should the payer of reimbursement alimony suffer illness or severe financial reverses which make it clear that he will be strained to fulfill the terms of the judgment then also reimbursement alimony can be reduced. In addition, where an initial award is reduced because of illness or financial strain to the educated spouse and that spouse regains his health or ability to pay the award could be enlarged to the full amount compensable. 14 Seton Hall L.Rev., ["Note: Matrimonial Law," 437, 459, n. 163 (1984)]
The writer of the note appears to believe that the award is based, at least in part, upon the needs of the recipient and the ability of the payer to pay, but offered no authority to support these assumptions.
It would be helpful to inquire into the circumstances that justify an award of reimbursement alimony. Mahoney said it "does not support reimbursement between former spouse in alimony proceedings as a general principal," 91 N.J. at 500 and it "would not be appropriate" where "the supporting spouse [sic] ... has already attained economic self-sufficiency." Id. at 504. Which is the precise situation here. Moreover,

*127 where the parties to a divorce have accumulated substantial assets during a lengthy marriage courts should compensate for any unfairness to one party who sacrificed for the other's education, not by reimbursement alimony but by an equitable distribution of the assets to reflect the parties' different circumstances and earning capacities. [Ibid.]
As previously noted, there were virtually no marital assets here.
Thus, it is only in those rare and unusual cases, such as we have here, when neither alimony nor the equitable distribution of marital assets can rectify an unredressed suffering, that reimbursement alimony should be awarded. This being so, it should logically follow that it is neither alimony nor a marital asset.
This court's decision in Reiss, supra, clearly stated that it was not granting alimony and that there were virtually no marital assets to be distributed. Obviously, what the wife was to receive was something different.
This wife was not awarded $1,500 a month for a specific period of time. She was awarded the specific sum of $46,706.50 and, because the husband was without assets, he was permitted to pay it at the rate of $1,500 a month, as a convenience to him, not the wife. And now, after receiving the benefit of that forbearance, he asks the court to hold that his former wife was only entitled to receive $1,500 a month so long as she lived and remained unmarried, and not necessarily the full sum of $46,706.50.
However, this clearly was not what this court intended. The wife contributed $46,706.50 for the professional education and training of her former spouse and she was to recoup that money by the award of reimbursement alimony. To now deny her full reimbursement simply because she again fell in love and remarried, would be both unfair and inequitable. As said in Hubbard, supra, to hold otherwise "would force her to forego marriage and perhaps even to celibacy for many years simply to realize a return on her investment and sacrifices" and *128 bestow upon the husband an unjust windfall. 603 P.2d at 752. Accordingly, monthly payments of $1,500 shall not cease upon her remarriage.
The court does not suggest that this should be an inflexible rule. There may well be circumstances when enjoyment of the enhanced earnings by the spouse with the professional education will never come to fruition, as for instance due to death or illness. In such circumstances, equity may well dictate that, since the enhanced earnings will not occur through circumstances beyond the fault of the payer, payment of reimbursement alimony should be reduced or terminated. However, since neither the wife's earnings nor assets were considered in granting the award, a fortiori, any substantial change in either should not be a basis for a reduction or termination of the award. Indeed, absent the loss of the anticipated enhanced earning power by the person with the professional degree, it is difficult to conceive of circumstances that would justify modifying the award.
It has been suggested that the award of reimbursement alimony really constitutes the entry of a judgment, citing Joseph Harris & Sons, Inc. v. Van Loan, 23 N.J. 466 (1957) which held that:
since it was an order for the payment of money it had the force, operation and effect of a judgment of the Superior Courts, [at 469]
and, as such, may not be diminished or voided by later events. A similar result was reached in Winter v. Winter, 162 N.J. Super. 456 (App.Div. 1978) which held that the remarriage of a wife had no effect on an order that reduced arrearages to a judgment. However, in the opinion of this court, the unique nature of reimbursement alimony should militate against such an inflexible rule in order to permit a court of equity, in appropriate cases, to ameliorate the burdens of the award in those rare circumstances when concerns of fairness so dictate.