205 N.J. Super. 41 (1985)
500 A.2d 24
RONALD A. REISS, PLAINTIFF-APPELLANT,
v.
SHERRY A. REISS, DEFENDANT-RESPONDENT.
RONALD A. REISS, PLAINTIFF-APPELLANT,
v.
SHERRY A. BROSNAHAN, FORMERLY KNOWN AS SHERRY A. REISS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1985.
Decided October 17, 1985.
*43 Before Judges O'BRIEN, SIMPSON and SCALERA.
Lawrence F. Gilman argued the cause for appellant (Sterns, Herbert and Weinroth, attorneys; Lawrence F. Gilman, and W.S.G. Skey, of counsel and on the briefs).
Donald M. LoMurro argued the cause for respondent (LoMurro & Eastman, attorneys; Kathleen A. Sheedy and Kerry E. Higgins, on the briefs).
The opinion of the court was delivered by SIMPSON, J.A.D.
In these consolidated cases, plaintiff husband appeals from the calculation of the amount of reimbursement alimony awarded his wife, the equitable distribution of a savings account one-half to each party, a required contribution towards expenses for the wife to pursue a master's degree, and denial of a post-judgment motion to terminate reimbursement alimony payments upon the wife's remarriage less than two months after the divorce. Most of the factual background is contained in the trial court's opinions reported as Reiss v. Reiss, 195 N.J. Super. 150 (Ch.Div. 1984) hereafter "Reiss I" and Reiss v. Reiss, 200 N.J. Super. 122 (Ch.Div. 1984) hereafter "Reiss II". The husband's contentions in Reiss I are that:
Point I THE TRIAL COURT ERRED IN FIXING THE AMOUNT OF REIMBURSEMENT ALIMONY TO BE PAID BY HUSBAND. . ..... . .
Point II THE TRIAL COURT ERRED IN AWARDING WIFE ONE-HALF OF HUSBAND'S SAVINGS ACCOUNT ACQUIRED AFTER THE SEPARATION OF THE PARTIES. .... ....... .

*44 Point III THE TRIAL COURT ERRED IN ORDERING HUSBAND TO CONTRIBUTE TO WIFE'S EXPENSES IN OBTAINING A MASTER'S DEGREE IN BUSINESS ADMINISTRATION. ........
In Point I the husband objects to Judge Imbriani's calculation of $46,706.50 reimbursement alimony as
... one half of [the wife's] earnings in Spain used to maintain her husband, or $40,414.50, and one-half of the difference in their earnings during his residency in the calendar years 1979 through 1981, or $6,292. [Reiss I 195 N.J. Super. at 161.
Although the judge's calculations are not directly contested, Dr. Reiss contends that only one-half of estimated expenses in Spain are reimbursable, excluding estimated vacation expenditures and further excluding any reimbursement for the post-Spain residency period. In our view, plaintiff reads Mahoney v. Mahoney, 91 N.J. 488 (1982) too narrowly. At page 501 of that seminal case, Justice Pashman states that:
To provide a fair and effective means of compensating a supporting spouse who has suffered a loss or reduction of support, or has incurred a lower standard of living, or has been deprived of a better standard of living in the future, the Court now introduces the concept of reimbursement alimony into divorce proceedings. The concept properly accords with the Court's belief that regardless of the appropriateness of permanent alimony or the presence or absence of marital property to be equitably distributed, there will be circumstances where a supporting spouse should be reimbursed for the financial contributions he or she made to the spouse's successful professional training. Such reimbursement alimony should cover all financial contributions towards the former spouse's education, including household expenses, educational costs, school travel expenses and any other contributions used by the supported spouse in obtaining his or her degree or license.
Under the circumstances of this case and substantially for the reasons set forth by the trial judge in Reiss I, we are satisfied that the earnings technique utilized in computing reimbursement alimony was appropriate. There were no children and the couple returned from Spain "with no savings and minimal personal property," Reiss I, supra 195 N.J. Super. at 155. We also approve the differential earnings technique used for Dr. Reiss' residency period, which is really an extension of his "successful professional training" as contemplated to be within the scope of a reimbursement alimony period in Mahoney, supra 91 N.J. at 501. The difficulty in calculating a *45 supporting spouse's "contributions" toward a former spouse's education, or the amount of appropriate reimbursement alimony, is apparent from the figures supplied the court by the parties. The wife sought $40,414.50, or one-half of her $84,329 earnings in Spain less $3,500 used for vacations, when the husband earned virtually nothing. For this period the husband suggested $8,030.50 or one-half of certain estimated expenses of $16,061 for rent, utilities, food costs, etc. The record contains no explanation of the difference between the wife's earnings of $84,329 and the $16,061 except some estimates for vacations, movies, ballet, etc. Since there were no savings and minimal personal property upon the couple's return from Spain, the only reasonable conclusion is that the pair otherwise spent the money for undocumented living expenses. In any event, to the extent the differential may have been expended for things like social security taxes creditable only to the wife and not deemed properly includable in reimbursement alimony, we are satisfied they are roughly offset by the delay in reimbursement of the wife, between the earnings periods from 1973 through part of 1978 and the date the monthly payments would have terminated in 1986 without interest.[1] In other words, the time value of money is not included in the calculation of reimbursement alimony although the remedial concept of such alimony recognizes financial contributions of the supporting spouse as a loss of an investment in future material benefits. The same analysis is applicable to the residency period from 1979 through 1981.
Point II is really an objection to a portion of the equitable distribution of all property of the parties that had been acquired prior to the filing of the divorce complaint. Here we are satisfied that the trial court's findings of fact are adequately supported by evidence and all related issues of law raised are *46 clearly without merit. The judgment in this respect is accordingly affirmed. R. 2:11-3(e)(1)(A) and (E).
In Point III of Reiss I the husband objects to the trial judge's determination that he pay one-half of the wife's "tuition, books, college fees and transportation expenses" if she pursues an MBA degree by the summer of 1986. Judge Imbriani denied permanent alimony and rehabilitative alimony, but found that the wife "is entitled to receive funds from the marital assets before distribution to enable her to complete her education ... [because].... The husband used marital assets to educate and advance himself and she is entitled to do likewise." Reiss I, supra 195 N.J. Super. at 156. We disagree with Judge Imbriani's analysis because the reimbursement alimony has already returned to the wife her one-half of the marital assets expended for the husband's education in Spain and the subsequent residency. Although the judge's opinion suggests that this unliquidated amount should be reserved from the marital assets before the balance is equitably distributed, the nature and rationale of such allowance contradicts the finding that rehabilitative alimony is unwarranted in the circumstances of this case. This portion of the divorce judgment is therefore reversed.
On March 17, 1984, less than two months after the judgment of divorce, Sherry Reiss married Daniel Brosnahan. Plaintiff, Dr. Reiss, had made the February 1 and March 1, 1984 reimbursement alimony payments and thereafter Judge Imbriani denied his motion to terminate such payments upon the remarriage. In Reiss II, supra, the judge concluded, in effect, that reimbursement alimony is sui generis and "neither alimony nor a marital asset." He concluded that reimbursement alimony was a flexible concept and that under the circumstances of this case termination upon remarriage would be inappropriate. The issue presented on this appeal is the degree of finality or permanency to be accorded an award of reimbursement alimony *47  which was specifically reserved for future determination in Mahoney, supra 91 N.J. at 503 n. 5.
Courts throughout the country have struggled with the problems resulting from the divorce of a professional person following a supporting spouse's financial contributions to the educational attainments of such professional. In addition to the cases cited in Mahoney, supra, see generally, Note "Traditional Alimony Can Be Restructured to Provide Reimbursement to a Spouse Who Supports His or Her Partner in the Quest for an Advanced Degree", 14 Seton Hall Law Rev. 437 (1984). See also Lovett v. Lovett, 688 S.W.2d 329 (Ky. 1985); Lehmicke v. Lehmicke, 339 Pa.Super. 559, 489 A.2d 782 (1985); Washburn v. Washburn, 101 Wash.2d 168, 677 P.2d 152 (1984). The inter-relationship of conventional alimony, rehabilitative alimony, reimbursement alimony and equitable distribution of property is evident from N.J.S.A. 2A:34-23 and the trilogy of Mahoney, supra; Hill v. Hill, 91 N.J. 506 (1982); and Lynn v. Lynn, 91 N.J. 501 (1982). Although we concur with the result reached in Reiss II, we believe that the New Jersey Supreme Court used the term advisedly when it introduced the concept of reimbursement alimony in Mahoney, supra 91 N.J. at 501. As such, it is alimony  subject to revision and alteration "from time to time as circumstances may require" as provided in N.J.S.A. 2A:34-23 and not dischargeable in bankruptcy (see Lynn, supra 91 N.J. at 515, n. 1. It does not follow, however, that reimbursement alimony must terminate upon remarriage of the spouse receiving such payments. N.J.S.A. 2A:34-25 antedates the concepts of reimbursement and rehabilitative alimony. Furthermore, this statute speaks only to conventional alimony, referring specifically to "the payment of money for the support of the former wife." We also concur in the determination below that under the facts and circumstances of this case the reimbursement alimony should not terminate upon Mrs. Reiss' marriage to Mr. Brosnahan.
*48 In summary, we affirm all determinations by Judge Imbriani except as to Point III in Reiss I. We remand to the trial court solely for the purpose of entering an amended judgment of divorce deleting the requirement that Dr. Reiss reimburse Mrs. Brosnahan for any expenses of obtaining an MBA degree.
No costs or counsel fees on this appeal.
NOTES
[1] The total reimbursement alimony of $46,706.50 was payable under the January 26, 1984 dual judgment of divorce at the rate of $1500 per month without interest (except for late payments) beginning February 1, 1984.