632 So.2d 1200 (1994)
Debra June Prestridge McCONATHY, Plaintiff-Appellee,
v.
Andy Carl McCONATHY, Defendant-Appellant.
No. 25542-CA.
Court of Appeal of Louisiana, Second Circuit.
February 23, 1994.
*1202 John C. Blake, Jonesboro, for defendant-appellant Andy Carl McConathy.
Gary D. Nunn, Jonesboro, for plaintiff-appellee Debra June Prestridge McConathy.
Before SEXTON, LINDSAY and BROWN, JJ.
LINDSAY, Judge.
The defendant, Andy Carl McConathy, appeals from a trial court judgment granting his former wife an award for her contributions to his education under LSA-C.C. Art. 121. The plaintiff, Debra June Prestridge McConathy (hereinafter referred to as "Ms. Prestridge"), answered the appeal. For the reasons assigned below, we reverse in part and affirm in part.

FACTS
In the fall of 1976, Mr. McConathy enrolled at Louisiana Tech University. However, he left college in 1980 without earning a degree. In September of 1983, he married Ms. Prestridge.
In the fall of 1986, Mr. McConathy, at his wife's insistence, returned to Louisiana Tech University to complete the academic requirements for a degree in elementary education. While Mr. McConathy pursued his education, Ms. Prestridge worked fulltime and provided the primary financial support for the family. During this period, both sets of their parents supplied the couple with various degrees of financial assistance. Mr. McConathy's mother paid the note on their trailer home for many months, while Ms. Prestridge's family supplied them with certain building materials for their home.
Mr. McConathy completed his course work at the end of the spring 1988 quarter, and he undertook his practice teaching in the fall 1988 quarter. In November of 1988, he received his degree.
In the meantime, the spouses had separated on May 2, 1988, when the wife left the matrimonial domicile. (She alleged that Mr. McConathy physically evicted her.) Following her departure, Mr. McConathy continued to reside in their trailer home.
On May 6, 1988, Mr. McConathy filed a petition for a separation. Ms. Prestridge answered and reconvened, seeking a divorce on grounds of adultery and use of the matrimonial domicile. At a subsequent hearing, the trial court declined to award use of the family home to either spouse and instructed the spouses to work on a property settlement.
In January, 1990, Ms. Prestridge filed the instant suit for divorce based on the spouses living separate and apart for more than one year. A judgment of divorce was granted in her favor on February 8, 1990. In that judgment, she reserved her right to seek partition of the community property.
Subsequently, Ms. Prestridge filed a rule to partition community property, in which she requested an award for her financial contributions to Mr. McConathy's education that increased his earning power to the extent that she did not benefit during the marriage from that increased earning power, pursuant to the provisions of former LSA-C.C. Art. 161, upon which the present LSA-C.C. Art. 121 is based.
In his answer to the rule, Mr. McConathy included a student loan of about $10,000 in a list of community debts.
On February 13, 1991, a hearing on the rule was held. Ms. Prestridge presented her own testimony, as well as that of her mother, June Prestridge, and Mr. McConathy. Her former husband also testified during his own case-in-chief and presented the testimony of his mother, Lorene Lawrence.
On October 7, 1991, the trial court rendered its initial written opinion. However, due to "clerical and arithmetic errors," the trial court issued amended reasons for judgment on December 11, 1991. The opinions are virtually identical, except for the final *1203 calculations for partitioning the community property.
In both opinions, the trial court found that Ms. Prestridge met the requirements of LSA-C.C. Art. 121. Specifically, the court found that Ms. Prestridge earned substantially more than Mr. McConathy during the marriage. The court found that between 1986 and 1988 the wife's financial contribution was $31,800.00, while the husband's was only $5,840.00. However, following his completion of his first year of teaching, Mr. McConathy earned $18,653.85.
The trial court divided various community assets between the parties. It also found that Mr. McConathy's student loan of $9,772.80 was a community debt and that $3,575.00 of the student loan disbursements had been deposited into the couple's joint checking account. The court found that the community had two other debts, the amount owed on the mobile home (which was not proven at trial) and a loan of $771.71 owed to the Jonesboro Federal Savings & Loan.
In calculating Ms. Prestridge's lack of opportunity to share in Mr. McConathy's enhanced income, the trial court subtracted the difference between the amount Mr. McConathy earned his first year teaching school ($18,653.00) and the highest amount he earned during the marriage ($6,766.00), or a total of $11,877.00. The court also found that Mr. McConathy should be responsible for the debt associated with obtaining his degree. Because the assets of the community were insufficient to compensate Ms. Prestridge for her inability to share in the enhanced income, the court made a separate award to her after the equalization of the community assets and debts.
It utilized the following computations to equalize the assets and debts:

$ 11,877.00 Value of lost benefit
 - 4,886.40 ½ student loan assigned to husband
_____________
 6,990.60
 - 385.86 ½ community unsecured loan assigned to husband
____________
 6,604.74
 + 3,875.00 ½ community assets in husband's possession
____________
 10,479.74
 - 1,243.42 ½ community assets in wife's possession
____________
$ 9,236.32 AMOUNT DUE TO WIFE

The court ordered that this sum be paid to Ms. Prestridge in installments of $192.42 per month for 47 months, with a final installment of $192.58. In conclusion, the trial court ordered that each party retain the community property in his possession, and all community debts were assessed against Mr. McConathy.
The court denied Ms. Prestridge's claim for reimbursement for the rental value of the husband's use of the family home. Exercising its discretion under former LSA-R.S. 9:308 (now LSA-R.S. 9:374), the court found that she had not proven her entitlement to be paid rent, citing Wochomurka v. Wochomurka, 552 So.2d 405 (La.App. 1st Cir.1989). It also denied her claim for attorney fees.
Mr. McConathy filed a motion for a new trial, contending that the wife's award under LSA-C.C. Art. 121 was unavailable at the time of the divorce in 1990 and that the trial court's calculations were erroneous. The trial court granted the motion on the limited issue of computing the reimbursements due to each party in light of Freeman v. Freeman, 552 So.2d 636 (La.App. 2d Cir.1989).
On March 9, 1993, the trial court issued written reasons for judgment, in which it reaffirmed its prior award. It corrected the prior judgment to the extent that there should be installments of $192.63 per month for 47 months, and a final (48th) payment of $192.71. It also directed that payment of the debt commence on April 1, 1993, and be paid by March 1, 1997. The court provided that the amount would be paid without interest if Mr. McConathy made all of the payments as *1204 directed. However, if payments were not made in accordance with its directive, the court decreed that Ms. Prestridge would be entitled to accelerate the full obligation and sue for the entire amount, along with the legal interest applicable on the date this judgment was signed.
Mr. McConathy appealed. He assigned as error the following: (1) the trial court erred in calculating the award under LSA-C.C. Art. 121 by basing it upon his increased earning power instead of his wife's direct financial contributions to his education; (2) the trial court erred in considering his present salary as evidence of his enhanced income or earning capacity; and (3) the trial court erred in awarding legal interest on the award under LSA-C.C. Art. 121.
Ms. Prestridge answered the appeal. Her assignments of error are as follows: (1) the trial court erred in not awarding her legal interest from the date of judicial demand on her award under LSA-C.C. Art. 121; (2) the trial court erred in allotting one-half of Mr. McConathy's student loans to her as a community debt; (3) the trial court incorrectly calculated the amount of the student loans by including the amount of interest to be paid on the loans; (4) the trial court erred in not awarding her one-half of the rental value of the community home under LSA-R.S. 9:374; and (5) the trial court erred in assessing the court costs against the spouses equally.

CALCULATION OF AWARD FOR FINANCIAL CONTRIBUTIONS TO SPOUSE'S EDUCATION
LSA-C.C. Art. 121 provides:
In a proceeding for divorce or thereafter, the court may award a party a sum for his financial contributions made during the marriage to education or training of his spouse that increased the spouse's earning power, to the extent that the claimant did not benefit during the marriage from the increased earning power.
The sum awarded may be in addition to a sum for support and to property received in the partition of community property.
This statute and its predecessor, LSA-C.C. Art. 161, have been infrequently addressed in Louisiana jurisprudence.[1] See Holland v. Holland, 539 So.2d 1011 (La.App. 4th Cir.1989), and Krielow v. Krielow, 622 So.2d 732 (La.App. 3d Cir.1993), both of which concerned LSA-C.C. Art. 161. In Holland, the court found that the article was inapplicable to divorce proceedings commenced before the effective date of the statute.
In Krielow, supra, the court allowed the husband to be reimbursed for one-half of such expenses as tuition and books connected to the wife's education. However, it found that the husband was not entitled to reimbursement for day care expenses and the wife's transportation expenses to and from school on the basis that "these costs do not constitute direct financial contributions to educational expenses as intended by the legislature." In so holding, the court relied upon comment (d) of LSA-C.C. Art. 121.
In determining the proper formula for calculating an award for Ms. Prestridge's contributions to her husband's education, we likewise find the comments to LSA-C.C. Art. 121 to be helpful. Comment (d) states that the term "financial contributions" includes "direct educational or training expenses paid by the claimant for the other spousesuch as tuition, books, and school fees." It also includes "financial contributions made to satisfy the living expenses of the supported spouse." As examples of how to calculate the figure representing the supporting spouse's financial contributions, the comment cited DeLa Rosa v. DeLa Rosa, 309 N.W.2d 755 (Minn.1981) and Reiss v. Reiss, 195 *1205 N.J.Super. 150, 478 A.2d 441 (Ch.Div.1984), aff'd, 205 N.J.Super. 41, 500 A.2d 24 (App. Div.1985). These cases effectively concluded that the proper measure of expenses for the educational or training period was the total income of the spouses during that period. See Katherine S. Spaht, Persons and Matrimonial Regimes, 47 La.L.Rev. 391, 394 (1986), which addressed LSA-C.C. Art. 161.
In DeLa Rosa, supra, the wife had supported the husband while he pursued his undergraduate and medical education. The court established the following formula:
It is this Court's view that the award should have been limited to the monies expended by respondent for petitioner's living expenses and any contributions made toward petitioner's direct educational costs. To achieve this result, we subtract from respondent's earnings her own living expenses. This has the effect of imputing one-half of the living expenses and all the educational expenses to the student spouse. The formula subtracts from respondent's contributions one-half of the couple's living expenses, that amount being the contributions of the two parties which were not used for direct educational costs;
Thus, the DeLa Rosa formula is as follows:
working spouse's financial contributions to joint living expenses and educational costs of student spouse
less
½ (working spouse's financial contributions plus student spouse's financial contributions8 less cost of education)
equals
equitable award to working spouse
[8. The financial contributions of the student spouse includes earnings and any student loans, grants, stipends or other funds obtained by that spouse.]
Essentially the same approach was taken in the Reiss case. That court awarded what it referred to as "reimbursement alimony" to a wife who had supported her husband while he obtained his medical degree. In so doing, it made the following observation:
We appreciate that the technique employed is unusual in that the common method of establishing what should be reimbursed is to ascertain what was actually expended not what was earned. But to apply such a method in a case such as this would be a venture in futility and result in denying a just claim for lack of evidence. Where, as here, records are attenuated or unavailable the technique employed is fair and just.
Our examination of the record reveals that certain figures reached by the trial court were incorrect, i.e., the parties' individual earnings for 1986. (The trial court found that Ms. Prestridge and Mr. McConathy earned, respectively, $14,394.50 and $522.50. However, close examination of the income tax return shows that the actual figures were, respectively, $12,362 and $2,555.) In computing the sum to be awarded to Ms. Prestridge under LSA-C.C. Art. 121, we have utilized what we find are the correct figures for the time that Mr. McConathy attended school while the parties were married and living together, a period of about 20 months. Furthermore, we decline to subtract the amount of child support received by Ms. Prestridge for her son from a prior marriage as it was obviously expended on the child's care. We also decline to include the house trailer payments made by Mr. McConathy's mother in the calculation of his contributions as this was a gift to both spouses. Applying the DeLa Rosa, formula to the facts and figures of the present case, we conclude that Ms. Prestridge is entitled to an award of $5,605.[2]
*1206 Like the trial court, we find that Ms. Prestridge is entitled to an award under LSA-C.C. Art. 121. However, we find that the sum was incorrectly calculated by the trial court. Accordingly, we amend the award to Ms. Prestridge to $5,605.

LEGAL INTEREST ON THE WIFE'S AWARD
Mr. McConathy argues that the trial court erred in awarding his wife any legal interest on the award for her contributions to his education because she did not pray for it in her petition. In turn, Ms. Prestridge contends the trial court erred in not awarding her legal interest from the date of judicial demand on that award.
We note that the trial court's judgment allowed legal interest on the award only if Mr. McConathy failed to make the installment payments. In that event, Ms. Prestridge would then be entitled to accelerate the full obligation and sue for the entire amount, along with the legal interest, from the date of the judgment originally granting the award.
Although a party does not pray for interest, a judgment may and should include an award of legal interest where legal interest is authorized by code article or statute. LSA-C.C.P. Art. 862; Webber v. Berry, 609 So.2d 1175 (La.App. 2d Cir.1992). Legal interest is due on all sums which are the object of a judicial demand. LSA-C.C. Art. 2924; Webber v. Berry, supra. Therefore, we find that an award of legal interest is appropriate in the present case.
In a suit for accounting and settlement of the community, we award interest from the date of judicial demand. Oliver v. Oliver, 561 So.2d 908 (La.App. 2d Cir.1990); Webber v. Berry, supra. However, the award under LSA-C.C. Art. 121 is a "special monetary award," not community property subject to distribution. Thus, it is not technically a part of the partition.
An unliquidated debt, such as a claim for contributions to a spouse's education or training, is due from the moment it is ascertainable by judgment. Alexander v. Burroughs Corporation, 359 So.2d 607 (La. 1978); Spaht, supra at 411. Therefore, we find that the trial court should have awarded Ms. Prestridge legal interest from the date of judgment, regardless of whether Mr. McConathy defaulted in his installment payments. The judgment will be amended accordingly.

HUSBAND'S STUDENT LOAN
Ms. Prestridge contends that the trial court erred in categorizing her husband's student loan as a community debt. She further contends that, if the student loan was properly classified as a community debt, then the trial court erred in calculating the amount of the loan by including the interest to be repaid.
LSA-C.C. Art. 2360 defines a community obligation as "[a]n obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse." Conversely, under LSA-C.C. Art. 2363, a separate obligation is defined as an obligation "incurred by that spouse prior to the establishment of a community property regime, or one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse." LSA-C.C. Art. 2361 states the presumption that, except as provided in Article 2363, all obligations incurred by a spouse during the existence of a community property regime are community obligations.
To determine whether these funds benefited the community, or were used for the "common interest of the spouses," it is necessary to examine the uses to which they were put. Webb v. Pioneer Bank & Trust Company, 530 So.2d 115 (La.App. 2d Cir. 1988). See also Ledet v. Ledet, 496 So.2d 381 (La.App. 4th Cir.1986).
The student loan was obtained by Mr. McConathy during the existence of the community property regime. Careful examination of the couple's joint checking account indicates that at least $3,575 (and perhaps as much as $4,675) of the $6,500 loan proceeds were deposited into that account. Apparently, the family's living expenses were paid *1207 from this account. Additionally, at the time the student loan was secured, the spouses contemplated that Mr. McConathy's pursuit of a higher education would ultimately benefit the community by increasing his earning capacity. Therefore, we find that the funds were obtained for the "common interests of the spouses," and they were properly classified as a community obligation.
Inasmuch as the loan was for the benefit of the community, we find no error in the trial court's decision to include the full amount (principal and interest) in its calculation of the debt.
This assignment of error is without merit.

RENTAL VALUE OF THE FAMILY RESIDENCE
Ms. Prestridge maintains that the trial court erred in not awarding her one-half of the rental value of the family home under former LSA-R.S. 9:308, now LSA-R.S. 9:374.
LSA-R.S. 9:374 provides, in relevant part:
B. When the family residence is community property, after the filing of a petition for divorce or in conjunction therewith, either spouse may petition for, and a court may award to one of the spouses, after a contradictory hearing, the use and occupancy of the family residence ... to either of the spouses pending further order of the court. In these cases, the court shall inquire into the relative economic status of the spouses, including both community and separate property, and the needs of the children, if any, and shall award the use and occupancy of the family residence ... to the spouse in accordance with the best interest of the family....
C. A spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provisions of R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, unless otherwise agreed by the spouses or ordered by the court.[3]
Both spouses requested use of the family home in the initial separation proceedings. A hearing on this issue was held on September 15, 1988. At the conclusion of the hearing, the trial court made the following statement as to then LSA-R.S. 9:308:
I just frankly don't know that I like the statute at all. It says that I can't assess one party to pay the other one. If I give you the family home, I can't make you pay rent to her or vice versus on the deal and I'm not sure that's the way it shouldn't be so I don't think that I'm going to give the family home to anybody. You both own it jointly and it's your problem. Ya'll need to work it out among yourselves and I know you're not going to do that.... If ya'll can work it out among yourselves the, you know, she says you can live there... of course you are living there, but if she says you can continue to live there by paying so much rent or vice versus, it suits me.

The court then concluded his remarks by expressing concern about letting Ms. Prestridge move back into the trailer home because of possible "flare-ups" with Mr. McConathy if they ran into each other. No judgment awarding the family home or ordering the payment of rent was issued.
In the subsequent partition proceedings, a different trial court judge found that, pursuant to Wochomurka v. Wochomurka, supra, Ms. Prestridge was not entitled to one-half the rental value of the family home. We agree.
Once the community of acquets and gains has been dissolved by separation, the spouses become co-owners, or owners in indivision, of the marital home. As such, the spouses are entitled to the use, enjoyment, and disposition of the property. LSA-C.C. Arts. 477 and 480. A corollary right permits the use and occupancy of the property by the co-owner without the payment of rent. *1208 Wochomurka v. Wochomurka, supra; Bolden v. Bolden, 524 So.2d 10 (La.App. 1st Cir.1988); Jones v. Jones, 605 So.2d 689 (La.App. 2d Cir.1992), writ denied, 607 So.2d 571 (La.1992).
Pursuant to LSA-R.S. 9:374, the trial court may order rental payments on the family home. However, the order must also be made at the time of the award of use and occupancy. This court reasoned in the Jones case that:
We do not believe the legislature intended to give a trial court blanket discretion to order retroactive rental payments at the time of partition, which might be years after the use and occupancy award.
In the instant case, no order of use and occupancy was issued to either party. Consequently, there was no related order directing Mr. McConathy to pay rent to Ms. Prestridge. As a result, Mr. McConathy, as a co-owner, was entitled to use and occupy the family home without payment of rent.
This assignment of error is meritless.

COURT COSTS
Ms. Prestridge also claims that the trial court erred in assessing the court costs against the spouses equally.
The allocation of court costs among the parties is a matter which is subject to the discretion of the trial court, LSA-C.C.P. Art. 1920, and its allocation of those costs will not be disturbed absent evidence of an abuse of that discretion. Schelldorf v. Schelldorf, 568 So.2d 168 (La.App. 2d Cir. 1990). While it is a general rule that the party cast in judgment should be taxed with costs, the trial court may assess costs of a suit in any equitable manner. LSA-C.C.P. Art. 1920; Polk Chevrolet, Inc. v. Webb, 572 So.2d 1112 (La.App. 1st Cir.1990), writ denied, 575 So.2d 394 (La.1991).
We find no abuse in the trial court's discretion in assessing the costs equally in this action which, in addition to making an award under LSA-C.C. Art. 121 in favor of Ms. Prestridge and against Mr. McConathy, also partitioned the community property between the spouses.
This assignment of error is meritless.

CONCLUSION
The judgment of the trial court is reversed in part and affirmed in part. Costs are assessed to the parties equally.
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of Debra June Prestridge McConathy and against Andy McConathy in the sum of $2,964.32[4], with legal interest from the date of the trial court judgment until paid, in 24 installments, payable on the 1st day of each month, with the first payment becoming due one month after this appellate court judgment becomes final. Mr. McConathy may prepay the remaining balance and receive credit for interest not accrued.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] LSA-C.C. Art. 161 was added by Acts 1986, No. 780. It was repealed by Acts 1990, No. 1008, § 6, effective January 1, 1991, at which time LSA-C.C. Art. 121 was added. Art. 161 provided as follows:

In a proceeding for a legal separation, declaration of nullity of marriage, or divorce, or in a separate proceeding, the court may allow a party a sum for financial contributions made to the education, training, or increased earning power of the other party to the extent that the contributing party has not previously benefited by such education, training, or increased earning power. The sum awarded for such contributions may be in addition to a sum for support and to property received in the partition of the community property.
[2] We calculated the contributions of each spouse during the period Mr. McConathy was in school as follows:

 Wife Husband
1986 (1/3) $ 4,121 $ 852
1987 $ 9,006 -0-
1988 (1/3) $ 3,251 $ 875
 ________ _______
 $16,378 $1,727

Therefore, under the DeLa Rosa formula:
$16,378 (wife's financial contributions) - ½ [$16,378 (wife's financial contributions) + $1,727 (husband's earnings) + $6,500 (husband's student loan) - $3,059 (husband's tuition costs, 7 quarters @ $437)] = $5,605;
for a final computation of: $16,378 - $10,773 = $5,605.
[3] At the time the parties originally separated in 1988, the statute governing use and occupancy of the family home was LSA-R.S. 9:308. It was repealed by Acts 1990, No. 1009, § 9 and redesignated as LSA-R.S. 9:374, effective January 1, 1991. However, the pertinent portions of the statutes are substantially the same.
[4] Like the trial court, we find that it simplifies matters to consider the amounts due under LSA-C.C. Art. 121 and the community property partition together. Consequently, we calculate the actual amount to be awarded to Ms. Prestridge as follows:

$ 5,605.00 Award for contributions to husband's education
 - 4,886.40 ½ student loan assigned to husband
_____________
 718.60
 - 385.86 ½ community unsecured loan assigned to husband
_____________
 332.74
 + 3,875.00 ½ community assets in husband's possession
_____________
 4,207.74
 - 1,243.42 ½ community assets in wife's possession
_____________
$ 2,964.32 AMOUNT DUE TO MS. PRESTRIDGE