480 A.2d 1111

**Raymond MAZZEI**

v.

**Flora (Mascaro) MAZZEI, Appellant.**

Superior Court of Pennsylvania.

Argued April 10, 1984.

Filed July 6, 1984.

Mark J. Homyak, Pittsburgh, for appellant.

Ronald L. Chicka, Greensburg, for appellee.

Before ROWLEY, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the Order of the Court of Common Pleas of Westmoreland County denying appellant's, Flora

Mazzei's, request for alimony.[1] We reverse.

The Mazzeis were married in 1945. Prior thereto, Flora worked in sales at a retail store, which occupation she discontinued upon marriage to become "a homemaker" and raise a son born in 1947. Thereafter, because Flora "was going to the doctor for three years," the couple moved in with her parents in Wilkinsburg, Allegheny County, Pennsylvania. Also, Flora remained at home to rear her son until he went off to college in 1967.

In November of 1970, the two separated and the wife stayed with mother, but sometime in 1970 or 1972 she secured an order from the Court of Common Pleas of Allegheny County directing the husband to pay $53.53 every two weeks for support. In 1981, the husband was found to be $400 in arrears and had his payments increased to $60.08 to offset the amount owed. The support received, which terminated with the grant of divorce, was the only source of income for the wife-appellant. In fact, she had to "borrow" $1,400 from her mother to pay a portion of her attorney's fees. Further, the medical benefits available to Flora, as appellee's spouse under Union Switch and Signal's contract with Westinghouse Corp., also terminated with the divorce. Equivalent coverage would cost $50 a month.

From the 1940s to the present, Flora has worked intermittently for various department stores. The jobs have been sporadic, "maybe two, three weeks at a time, and then [she would] g[e]t laid off. [She] never had a full time job." The most recent employment was in 1975 and encompassed two-three weeks during the holidays and one or two days a week thereafter. However, when Flora's 83-year-old father became ill, she "wasn't available to go in" and had to leave to care for him, which she did until his death.

1. As for that portion of the Westmoreland County court's Order granting the divorce, or requiring the husband to pay: 1) one-half ($1,500) of the wife's attorney's fees; 2) $242.50 for the cost of the court reporter's services; and 3) $520 for the Master's services, neither party has filed an appeal therefrom. Thus, instantly, the sole issue concerns the denial of alimony.

Additionally, in regard to work experience, Flora attended a three-year-old child for three days a week prior to the family moving. Thus, aside from the jobs just mentioned, Flora has not worked since her husband left in 1970. Nonetheless, "[i]f [she] could find one, [she] probably would [work.]" However, as she recounted, given her age (57) and educational background (high school), despite her "good health," "with [her] training where would [she] go?" Add to this the fact that Flora does not drive, resides with and cares (cooks and cleans) for her 83-year-old mother who receives medication for high blood pressure, and the prospects for (full-time or part-time) employment in southwestern Pennsylvania are bleak.

Since the couple separated, Mr. Mazzei has been cohabitating in Westmoreland County with another woman and her two children, one of whom goes to school in Virginia. The two share the expenses for an apartment, food, utilities and a new car payment purchased for the group. Mr. Mazzei has not been in the best of health, yet he continues to retain his position as a union official (grossing $21,900 in 1980) at Westinghouse Corp., which affords him the opportunity to work in the plant rather than "on the road".

Procedurally, the instant case was initiated by the appellee's filing of a complaint in divorce on December 12, 1980. In response, the appellant filed a counterclaim seeking, *inter alia*, alimony. A preliminary conference before the Domestic Relations Office in accordance with the Westmoreland County Rules of Procedure proved fruitless on the issue of alimony.[2] Accordingly, a Master was appointed and a hearing was held on August 25, 1981. As a result thereof, the Master prepared a nine-page report finding that, at the time of the hearing, appellee was 56 years old and "in seemingly good health except for some concern over

---

2. Similarly, no agreement was reached as to alimony *pendente lite*, life insurance policy, counsel fees and expenses. The parties did agree that, as to equitable distribution of property, "[e]ach party [was] to maintain present items in their possession." However, neither party listed any "Marital Assets" in their "Inventory and Appraisement" sheet filed with the court.

a potential heart condition." He earned $19,000 per year [3] and was paying the appellant "support in the amount of $53.53 every two weeks."

The appellant, on the other hand, was characterized as living with her mother for the past 10 years, receiving support from the appellee for the same period "and ... work[ing] little if at all over the last several years[, although] ... apparently [ ] in good health ...." Also, the Master documented the appellant's work experience, age, educational background and the fact that no jointly owed marital liabilities existed.

In conclusion, the Master examined the evidence against the backdrop of the 1980 Divorce Code, specifically Section 501 and subsection (c) thereunder, before recommending that the appellant be denied alimony. In doing so, he wrote in relevant part:

> ... *Certainly the Defendant[-appellant] would be better able to live with a stipend paid by the Plaintiff,* however, it appears by considering all of the relevant factors that alimony in this case would not be appropriate. The Defendant has done little to obtain appropriate employment over the last several years. She is certainly able to work and she testified to that effect. She is not quite as helpless as she attempted to show through her testimony. She voluntarily quit driving several years ago and for no substantial reason gave up this quick and relatively inexpensive mode of transportation. There is little merit in her contention that she had to take care of her aged mother who from the testimony appears to be in better condition to take care of herself than the Defendant is. *The Master finds no merit whatever in the*

---

**3.** Our reading of the hearing transcript discloses that the appellee, according to his 1980 Income Tax Return, earned $20,900 and received a refund of $851.12 by filing a joint return on which he signed the appellant's name, purportedly with her consent, but he did not share it with his then-spouse. This same practice occurred in 1979, wherein appellee received a refund of $1,720.88, and, again, appellant received none of the proceeds generated by the joint filing. In both instances the appellant supposedly refused appellee's offer to split the refunds.

*notion that the Defendant should receive alimony even for a short period of time so that the Defendant may seek appropriate employment.* If the Defendant had shown any inclination since July of 1980 to find gainful employment, *the Master might well have granted alimony for a short period of time so as to allow Defendant additional time to seek employment. However, there is no testimony whatsoever that the Defendant took any action since the passage of the new Divorce to improve her financial condition.* She certainly was on notice from July 1980, that her husband, Plaintiff, would be entitled to a divorce under the new Code and that that divorce would terminate her support. She further must be charged with the knowledge that alimony would be given only in certain cases to those truly qualifying for alimony.

*The Master is not unmindful of the Defendant's present financial outlook, but the Master finds that the Defendant is employable and unqualified for alimony under the Divorce Code of 1980.* Therefore, the Master recommends no alimony be paid to the Defendant.

(Emphasis added)

Exceptions to the Master's recommendations, along with briefs in support thereof, were filed by both sides. Thereafter, by Opinion and Order dated March 18, 1982, the court adopted, with modifications, the Master's findings and conclusions. This appeal followed and questions the denial of the request for alimony.

■ At the outset, we observe that a trial court's order concerning alimony is to be evaluated against an abuse of discretion standard. *Remick v. Remick,* 310 Pa.Super. 23, 456 A.2d 163 (1983). Under such a standard, albeit we are not to usurp the trial court's duty as the finder of fact, our obligation to review the proceedings thoroughly under the 1980 Divorce Code is no less extant. *Ruth v. Ruth,* 316 Pa.Super. 282, 462 A.2d 1351 (1983).

The guideposts through which one must make his way in reaching a conclusion of whether an award of alimony is or

is not warranted are enumerated in Section 501(a), (b) & (c) of the 1980 Divorce Code; to-wit:

### § 501. Alimony

(a) The court may allow alimony, as it deems reasonable, to either party, only if it finds that the party seeking alimony:

(1) lacks sufficient property, including but not limited to any property distributed pursuant to Chapter 4, to provide for his or her reasonable needs; and

(2) is unable to support himself or herself through appropriate employment.

(b) In determining whether alimony is necessary, and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages, and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties including but not limited to medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which it would be inappropriate for a party, because said party will be custodian of a minor child, to seek employment outside the home.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage; however, the marital misconduct of either of the parties during separation subsequent to the filing of a divorce complaint shall not be considered by the court in its determinations relative to alimony.

(c) Unless the ability of the party seeking the alimony to provide for his or her reasonable needs through employment is substantially diminished by reason of age, physical, mental or emotional condition, custody of minor children, or other compelling impediment to gainful employment, the court in ordering alimony shall limit the duration of the order to a period of time which is reasonable for the purpose of allowing the party seeking alimony to meet his or her reasonable needs by:

(1) obtaining appropriate employment; or

(2) developing an appropriate employable skill.

The Act of April 2, 1980, P.L. 63, No. 26, § 501, eff. July 1, 1980; 23 P.S. § 503(a), (b) & (c). Further, the Legislature intended that the preceding factors were to be viewed in conjunction with the policy of the Commonwealth in enacting the 1980 Divorce Code, i.e., to:

Effectuate economic justice between parties who are divorced ... and grant or withhold alimony according to the actual need and ability to pay of the parties ....

The Act of April 2, 1980, P.L. 63, No. 26, § 102, eff. July 1, 1980; 23 P.S. § 102(a)(6); see also Bickley v. Bickley, 301 Pa.Super. 396, 447 A.2d 1025 (1982).

The lower court commences its discourse by distinguishing a case in which it granted permanent alimony (see unpublished opinion in Smith v. Smith, No. 1722 of 1978 (1981) of the Court of Common Pleas of Westmoreland County, per Judge Marker,) from appellant's situation. Although it is unassailable that the facts in both cases are different, it becomes evident upon close scrutiny that the

differences are without distinction and certainly of no real substance so as to justify the disparity in the result reached here.

For example, the lower court took note that "Mrs. Smith possessed a tenth grade education, and was never licensed to drive. In the within case, the defendant is a high school graduate, and ... voluntarily ceased to drive ... [in 1951, following an accident,] for no substantial reason." We point these two items out because they are emblematic of the type of differences looked to by the lower court in denying alimony to the wife-appellant.

Another factor deemed of significance was appellant's "expected inheritance" from her mother. 23 P.S. § 501(b)(4). The lower court felt it was "logical ... [to] consider the extreme liklihood [sic] that the defendant shall inherit from the mother's estate." We find this element to be of dubious value for three reasons. First, there is absolutely no evidence of record to establish the nature and extent of appellant's supposed inheritance from the mother, save for the reference at the Master's hearing to appellant living in her mother's home. Even then, we have no insight into the valuation of the residence/estate. Second, and most importantly, the appellant testified to having two sisters (Dorothy Hoch and Betty Dunbar), "so it is unclear what will happen to this house upon her mother's death." *Kertis v. Kertis,* 132 Pitts.L.J. 199, 201 n. * (1984). The third, and final, point to be made is that no matter how much one may "expect" to be the recipient of one's bounty, all too often the fickleness of the decedent in regard to his/her estate may leave one gravely disappointed. *See In re Estate of Agostini,* 311 Pa.Super. 233, 457 A.2d 861 (1983), petition for allocatur denied June 24, 1983 (Decedent/mother changed Will eight times, the result of which diminished her adopted children's inheritance).

Further, the lower court emphasizes the appellant's failure to act in two specific areas, i.e., the securement of employment and the seeking of an increase in support during the life of the order requiring such payments. The

weight attached to both subjects is evident from the fact that the former point is mentioned four times, while the latter is discussed six times, during the course of the lower court's opinion denying alimony.

We find neither point to be persuasive.

On the question of work, because the appellant was found to be employable, the lower court viewed with disfavor her reluctance "to seek at least part time employment at any time after 1953, the year in which the parties' minor child would have commenced school[; similarly,] ... the Court s[aw] no reason why the defendant could not have been able to find employment sometime between the years of 1967 and the time of the Master's hearing [in 1981]."[4]

We interpret the lower court's treatment of appellant's (in)action in the employment field to be tantamount to imposing sanctions in the form of a denial of alimony. This, we believe, is a misapplication of the law under the instant facts. We do so in light of this Court's recent pronouncement in *Eck v. Eck*, 327 Pa.Super. 334, 475 A.2d 825 (1984).

In *Eck*, a 55-year-old wife was denied alimony from her 57-year-old employed husband (with a net income of $349.22 per week) following the grant of a divorce, which order also terminated support payments of $45.50 per week. We reversed in the belief that the lower court abused its discretion by "penaliz[ing]" the wife for caring for her aged, invalid mother. However, our determination to reverse did not rest solely upon this point. The *Eck* Court explained it thusly:

> We note that secion 501(c) of the Divorce Code states:
>> (c) Unless the ability of the party seeking the alimony to provide for his or her reasonable needs through employment is substantially diminished by reason of age, physical, mental or emotional condition, custody of minor children, *or other compelling impediment to*

4. It seems that the lower court dismissed wife-appellant's employment on a part-time basis for a department store in 1975 as not impacting upon her supposed "obligation," a characterization deduced from our reading of the lower court's opinion, to find work.

*gainful employment,* the court in ordering alimony shall limit the duration of the order to a period of time which is reasonable for the purpose of allowing the party seeking alimony to meet his or her reasonable needs by:

(1) obtaining appropriate employment; or

(2) developing an appropriate employable skill.

We believe that appellant's caring for her mother was just such a compelling impediment to gainful employment, *as was her lack of employment skills, lack of education, lack of work experience and her age.*

The trial court viewed any award of alimony as an unfair imposition of the "burden of parental support" upon the appellee. The facts developed by the master do not support such a characterization. Where, as here, the party seeking alimony had received the sum of $45.50 as support over a period of ten years, had returned to her native Northwest to care for her blind, aged mother (89 years old), had not worked other than as an occasional babysitter since entering marriage thirty-five years ago, and had no retained employable skills, we have no difficulty in concluding, as did the master, that appellant's ability to provide for her *own* reasonable needs through employment had been substantially diminished by reason of age (55 years), lack of completed high school education, lack of work experience, and other compelling impediments to gainful employment.

The master, based upon the facts then before him, wisely recommended that appellant be required to report, one year from the date the proposed alimony order would be entered, all steps taken to secure employment, with a list of all income from any sources. Had this recommendation been adopted by the trial court, appellant would have received what was her present right to alimony under the [1980] Divorce Code, while having to respond to the overall objectives and purposes of the Code. (Emphasis added in part) (Footnote omitted)

*Id.,* 327 Pa.Superior Ct. at 341, 475 A.2d at 828. *Accord Geyer v. Geyer,* 310 Pa.Super. 456, 456 A.2d 1025 (1983); *Kertis v. Kertis, supra.*

Instantly, as in *Eck,* the wife-appellant had a minimal education, had not openly sought (full) employment either during the marriage or after separation, was over 50 years of age, possessed no skills as such and preoccupied her time with caring for an aged mother, in the parent's home. Also, there was little or no property possessed by either spouse as evidenced in their respective "Inventory and Appraisement" statement of record.

■■■■ On the strength of *Eck,* plus what we perceive to be imbued in the Legislature's concept of "economic justice," we find the lower court to have abused its discretion in finding that appellant's "employability," in essence, was detrimental to her attaining alimony. The favored approach, as espoused in *Eck,* would be to monitor the appellant's efforts in securing employment over a period of, let's say, a year while still allowing her the right to receive alimony. At the end of the time specified, one would be in a much better position to judge the ex-spouse's accessibility into the job market, given the individual's talents and efforts, and assess whether alimony should be terminated or continued. Stated otherwise, "if a party receiving alimony is able to provide for his[/her] reasonable needs through employment, the court is to fashion an alimony order to be in effect only until such employment has been obtained or the party has developed an appropriate employable skill." *Geyer v. Geyer, supra,* 310 Pa.Super. at 464, 456 A.2d at 1029. However, it goes without saying that the eclectic approach just discussed is not a panacea for any and all cases, but is merely an alternative method by which to deal with an area of the law which is still in its nascent stage in this jurisdiction. There may be instances in which permanent alimony may be warranted, as evidenced by the lower court's own ruling in *Smith v. Smith, supra.* Given the unsettled nature of the facts instantly, we need not delve into that question at the moment.

Nonetheless, we do wish to remark that our decision entitling the wife-appellant to alimony is not diminished one iota by the fact that she never once sought an increase in support during the time that she was receiving support. If anything, this fact reflects on the husband-appellee's continuing ability to pay. For over ten (10) years he has made payments without complaint. In fact, in 1981, the Court of Common Pleas of Allegheny County adjudicated the husband-appellee to be in arrears and caused his support payments to be increased to offset the delinquency. Interestingly enough, at no time during the pendency of the ruling did the husband-appellee voice his objection to a perpetuation of the order, *despite the fact that this occurred subsequent to the institution of the instant divorce in which he contested his ability to "meet [his] monthly expenses[.]"* (N.T. 8/25/81 at 101) We believe that the complacency of the husband-appellee to protest payment is attributed to the fact, as acknowledged by even the lower court in its Opinion to us, that "said support order ... [was] less than substantial," and not his failure to secure legal representation. (N.T. 8/25/81 at 84)

To reiterate, we note that throughout the 25 years of marriage (i.e., 1945 until the date of separation in 1970, which for all intents and purposes was the *de facto* dissolution of the union), the wife-appellant worked only in the home raising the parties' son; no marital property was accumulated, at least none was listed in either party's "Inventory and Appraisement" statement, so none of the wife-appellant's needs could be met through the equitable distribution of marital property; because of wife-appellant's lack of job experience, age and limited education, we have seen (from the part-time work in 1975 in a department store) that her employment possibilities will be restricted to jobs paying little more than the minimum wage, *see Kertis v. Kertis, supra;* and the husband-appellee has employment (allowing him to gross, at least in 1980, up to $21,900 per

year)[5] which will afford him the right to a pension paying $12.75 per month at age 58 for each year with Westinghouse—as of 1981, he had 21 years of service.[6]

Also, we in no way wish to minimize the right of the wife-appellant to continue to be the recipient of alimony upon her securement of possible employment, for, of necessity, the income earned from the job is crucial in evaluating whether she will be able "to provide for ... her reasonable needs[.]" *See* 23 P.S. § 501(a)(2) & (c).

Accordingly, the Order of the court below is reversed and the case is remanded for the entry of an appropriate award of alimony. Jurisdiction is relinquished.

---

**5.** It is to be recalled that the husband-appellee's income can be joined with that of his female companion's, which is approximately $14,000, in evaluating his ability to pay alimony and the amount. *See Commonwealth ex rel. Traeger v. Ritting,* 206 Pa.Super. 446, 213 A.2d 681 (1965).

**6.** It must be remembered that the husband-appellee has the right to seek review of the alimony ultimately awarded by establishing to the court below that "changed circumstances" justify a modification, suspension or termination of the order entered. *See* 23 P.S. § 501(e).