575 A.2d 587

**Nora COFFEY, Appellant,**

v.

**Louis COFFEY, Appellee.**

**Nora COFFEY, Appellee,**

v.

**Louis COFFEY, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 26, 1989.

Filed May 16, 1990.

Albert Momjian, Philadelphia, for appellant (at 34) and appellee at (144).

David N. Hofstein, Philadelphia, for appellant (at 144) and appellee (at 34).

Before MONTEMURO, POPOVICH and CERCONE, JJ.

MONTEMURO, Judge:

In this case we are presented with cross appeals from an undifferentiated spousal and child support order requiring Louis Coffey to pay Nora Coffey $3,932 per month for the reasonable expenses of herself and the parties' two minor children, and to provide direct payment for the children's dental, tutoring and tuition costs.

Preliminarily we note that we will reverse an award of spousal support only if the surrounding circumstances suggest that the trial court has abused its discretion in making the award. *Goodman v. Goodman*, 375 Pa.Super. 504, 544 A.2d 1033 (1988).

Further, and similarly,

No child support order will be disturbed unless there is insufficient evidence to sustain the order or there has been an abuse of discretion by the lower court. *Ritter v. Ritter*, 359 Pa.Super. 12, 518 A.2d 319 (1986). "An abuse of discretion is not 'merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown

by the evidence or the record, discretion is abused." *Fee
v. Fee*, 344 Pa.Super. 276, 279, 496 A.2d 793, 794 (1985).
*Steenland–Parker v. Parker*, 375 Pa.Super. 457, 461, 544
A.2d 1010, 1012 (1988).

The parties to the case were married in 1967, and separated in 1986 when Louis Coffey departed the marital residence. Appellant Nora Coffey is 48 years old. She attended college for about three years, but discontinued her education at appellee's request before receiving her degree. Appellant's employment history has been limited. She worked as a university research assistant prior to and for a short time after her marriage, and held a similar position during 1977–78, leaving that employment when she underwent a hysterectomy; she has not, since then, held a paying position.

Appellant's primary involvement outside the home has, since 1982, been with a non-profit information service known as HERS (Hysterectomy Educational Resources and Services), of which she is the founder. The idea for this organization grew out of the medical problems appellant experienced following her own surgery, debilitating bone and joint pain which was eventually diagnosed as fibromyalgia.[1] Her duties with regard to HERS, most of which have since been assumed by volunteers and paid employees, were originally of the administrative variety, but are now restricted by the fibromyalgia symptoms to some telephone work, some organizational efforts involved with conference planning, and some writing and editorial oversight of the HERS newsletter. Appellant also suffers from osteoporosis in her right hip. She resides with the parties' teenage children in the marital residence, and apart from appellee's contributions, has no income.

The marital residence is itself the center of a controversy, as each party attributes its acquisition, approximately a year prior to separation, to the insistence of the other on

---

1. Fibromyalgia is not, strictly speaking, a disease, but a syndrome, which is apparently diagnosable only in terms of pain reactions, and is not susceptible to laboratory measurement.

more luxurious accommodations. The house, a six bedroom residence purchased for $250,000 in 1985, is located in the Main Line suburban community of Bala Cynwyd, and carries a monthly mortgage payment of $1,720.

Appellee is 50 years old, a practicing attorney who is a senior partner in a prestigious Philadelphia law firm. In addition to his practice, from which his gross distribution in 1986-87 was $245,000, appellee is involved in several real estate ventures from which he derived income amounting to $56,000. Appellee also had interest earnings of $10,000. His total earnings for the period was therefore $311,000. Appellee has no known health problems. At the time of hearing, he was renting living premises near his place of work.

The parties present us with the obverse and reverse of the same questions: whether the trial court committed reversible error by attributing to appellant too great or too small an earning capacity; whether the amount of support, and thus the reasonable expenses of (especially) appellant and the parties' children, was too great or too small; whether appellee's available income was over or underestimated. In addressing these issues, we note that after having reviewed the record in this case, the arguments of the parties and the applicable law, we find that, for the reasons which follow, the trial court did in fact abuse its discretion, having based its decisions on a mistaken understanding of the governing legal principles, and a misreading of the facts.

The trial court accepts the deductions from gross income offered by appellee as having been mandated by the law firm which is his employer, even offering an apologia about appellee's adherence to the firm' policy of contributing largely to charitable and political activities. The deductions, which include such contributions, as well as mileage and entertainment expenses, total approximately $17,000 annually.[2]

**2.** These deductions are listed as follows:

| | |
|---|---|
| Charitable contributions | $8,350 |
| Political Action Committee | 1,200 |

The Support statute, 23 Pa. C.S.A. § 4302, defines "net income" as "Gross income minus taxes and any other deductions mandated by the employer as a condition of employment." Although there is no legislative guidance offered as the sort of deductions contemplated by the statute, the recently adopted Rules of Civil Procedure relating to support actions do place limitations on allowable deductions. Rule 1910.16–5(b)[3] specifies that only the following items are subtracted from gross income to calculate the net which determines support amounts:

1. federal, state, and local income taxes;

2. F.I.C.A. payments and non-voluntary retirement payments;

3. union dues;

4. health insurance premiums for the benefit of the other party or the children.

If indeed appellee's employer requires of him, in order to maintain his employment, the sorts of payments deducted by the trial court, there would seem to be serious difficulties with the legality of these exactions.[4] If, on the other hand, these contributions and other payments are voluntarily made by appellee to assure the continuing success of the practice with the recipients of the firm's largesse, then they are not deductible at all for purposes of calculating support obligations. Moreover, there is offered in support of the proposition that these are mandatory payments, no partnership agreement or other document which states that they

| | |
|---|---|
| Political Contribution | 2,000 |
| Business Entertainment | 3,500 |
| Business Mileage (Unreimbursed) | 1,540 |

**3.** The new Rules became effective September 30, 1989. The order being challenged in the instant case was entered November 23, 1988, and notice of appeal lodged December 22, 1988. The appeal was thus pending when the new Rules became operational, and is governed by them. *See, Moore v. Moore,* 390 Pa.Super. 174, 568 A.2d 250 (1990).

**4.** See, e.g., 18 Pa.C.S.A. § 7322. Demanding Property to secure employment.

are a condition of employment.[5] Even the trial court, which accepted at face value appellee's assurance as to the necessity for the contributions noted that the donations were "recommended" rather than required by the firm's Executive Committee. (T.C.O. at 9).

The law is well settled that the amount of a support award is based upon earning capacity, less reasonable expenses, not merely cash flow. *Commonwealth ex rel. Goichman v. Goichman*, 226 Pa.Super. 311, 316 A.2d 653 (1974). Therefore, steps taken to reduce income for the purpose of avoiding or decreasing support are ineffective insofar as diminishment of the obligation is concerned. *See, Akers v. Akers*, 373 Pa.Super. 1, 540 A.2d 269 (1988); *Fichthorn v. Fichthorn*, 368 Pa.Super. 305, 533 A.2d 1388 (1987); *Weiser v. Weiser*, 238 Pa.Super. 488, 362 A.2d 287 (1976). *See also* Pa.R.C.P. 1910.16–5(c)(1). Moreover, "the responsibility of the parents to support the child[ren] to the best of their ability, consistent with their own station in life, is 'well nigh absolute' ", *Commonwealth ex rel. Kaplan v. Kaplan*, 236 Pa.Super. 26, 28, 344 A.2d 578, 579 (1975).

Reasonable expenses are not limited to the bare necessities of life but extend to articles which are reasonably necessary for the proper and suitable maintenance of the child in view of his social station in life and in view of his parents station in life.

*Shutter v. Reilly*, 372 Pa.Super. 251, 260, 539 A.2d 424, 428 (1988).

While support orders may not be punitive or confiscatory, sacrifices in aid of achieving the support goal may be demanded. *Kaplan, supra.* All of which leads us to the question of whether contributions to charitable organizations, regardless of their worthiness, and political contributions, despite the public spiritedness they demonstrate, as well as business entertainment and mileage, are of suffi-

---

5. Appellee's contributions to a mandatory retirement plan and capital fund are outlined in an affidavit from the firm's comptroller. Presumably, therefore, were documentation available for the other payments it would have been forthcoming.

cient importance to overcome the claims of appellee's family upon his earnings. We find that they are not.

In his challenge to the trial court's award, including his demand that his family move into an apartment, appellee contemplates an absolute reduction in the standard of living which his wife and children enjoyed during coverture, regardless of whether the standard was set by the house in Bala Cynwyd, or the previous one in Mount Airy.[6] While appellee may not be penalized for choosing to work where he is strongly advised to participate in activities such as those he wishes to exclude from income, he must nevertheless face the consequences when it becomes clear that his income potential need not take account of such recommendation. His donations cannot form the basis for an insistence that his family leave the marital home, or that they drastically alter the kinds and amounts of expenses they may reasonably incur. We held in *Weiser, supra,* that this insistence is improper, especially where the respondent has not himself suffered noticeably from financial deprivation. Under the trial court's order, appellee herein would have approximately $36,000 in tax free income after meeting both his own living expenses and those of his family's which have been accepted as reasonable. We would, in disallowing the claimed deductions, remind appellee of the old adage that charity begins at home.

■ Consistent with its seeming determination to maintain appellee in the style to which he has become accustomed, the trial court excluded from its calculations $56,000 received by appellee in 1987 from the sale of some limited partnerships, on the ground that they were not productive of annual income, and were therefore more properly considered in equitable distribution proceedings. As we stated

6. Despite appellee's depiction of the family's previous existence as extremely modest, the trial court found that the parties' vacation had been "luxurious." (T.C.O. at 23) Further, even assuming that the house in Mt. Airy was reflective of a different scale of living, it was, as appellee points out, a large, comfortable house (Appellee's Brief at 38), not an apartment.

in another context, and at least insofar as child support is concerned,

All income from whatever source, is to be evaluated as well as financial resources and property interests as of the time at which support payments are sought.

*Shindel v. Leedom*, 350 Pa.Super. 274, 279, 504 A.2d 353, 355 (1986). *See also, Steenland–Parker v. Parker, supra;* 23 Pa.C.S.A. § 4302. In *Fichthorn, supra,* the appellant argued that salary bonuses which were neither guaranteed nor within his control to confer were not part of his income for support purposes. We disagreed, again on the principle that they were unarguably income, and if in fact they did not recur, appellant could petition for a reduction of his support obligation. The same is true of the instant situation.

Next, we would agree with appellant that the support order should have been allocated, as the tax implications further reduce the amount available to either the children or appellant. Because the order was entered pursuant to a complaint in support under applicable Rules of Civil Procedure, it is immediately appealable either as to its child support component or its spousal support component. *See,* Pa.R.C.P. 1910.16(b). The trial court's failure to recognize the financial disadvantage to appellant and the parties' children, and the consequent advantage to appellee of its undifferentiated order constitutes an oversight which exacerbates the abuse of discretion committed by the court in allowing the deductions discussed above. We find that this error must be remedied. *See,* Pa.R.C.P. 1910.16–5(e).

We also find grounds for reversal on the basis that the trial court's order incorporates obvious errors of fact. As appellant points out, the order attributes $1,297 per month to the mortgage on the marital residence. This figure is neither the original monthly payment, $2,413, the payment due since the mortgage was refinanced, $1,720, or any combination of the two. Moreover, the taxes which the trial court states are included in the mortgage payment, are not. The combination of these errors is substantial.

Finally, as appellant points out, application of neither the formula in *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984), nor the Montgomery County Child Support Guidelines is evident from the undifferentiated order. This omission alone would be sufficient for reversal. *Shutter v. Reilly, supra.* However, the county guidelines have been superceded by those appearing in the Procedural Rules governing support actions; it is therefore the latter, in conjunction with *Melzer,* and the circumstances of the case which must be considered. *Lesko v. Lesko,* 392 Pa.Super. 240, 572 A.2d 780 (1990).

The area of most significant disagreement between the parties herein is the trial court's attribution to appellant of a $15,000 per year earning capacity: appellant claims that she is so debilitated by her condition as to be unemployable, while appellee argues that the trial court has grossly underestimated his wife's incapacity. Appellant, after having seen at least a dozen doctors in the early years of her illness, was nevertheless not diagnosed until 1987, having in the meantime found some relief from pain in weekly acupuncture treatments. Even after a name, fibromyalgia, was attached to the symptoms she was experiencing, she has been less than totally cooperative in demonstrating her claim to the court, declining her own physician's suggestion of a bone scan, and refusing to be examined by appellee's expert. Predictably, both the medical and rehabilitation experts mirror the views of the party introducing them. Even were there less disagreement, the facts which both parties recognize, are, in general, not hopeful: appellant is close to fifty years old with little work history, minimal higher education, and uncertain health.

However, in making its determination as to appellant's prospects, the trial court relied principally, and in this instance correctly, upon appellant's own accomplishments, notably her work in connection with the HERS foundation. Whatever her limitations, appellant has organizational ability and considerable intelligence. Whether her physical state will permit her to exercise these will depend upon any

improvement wrought by an end to this litigation, and whether she can find a market for her skills. She is required to make an effort in this direction, but, as we stated with regard to appellee's income, should the situation change, recourse to the courts for modification is an available alternative.

Reversed and remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.

POPOVICH, J., files a concurring and dissenting opinion.

POPOVICH, Judge, concurring and dissenting.

This case involves cross-appeals from the order of (child and spousal) support entered by the Court of Common Pleas of Montgomery County (per Davenport, J.) in favor of Nora Coffey and her two children and against Louis Coffey.

For the reasons that follow, I cannot join in all of the Majority's conclusions. To start, I have examined the support order under an abuse of discretion standard. See *Fee v. Fee*, 344 Pa.Super. 276, 496 A.2d 793 (1985). In doing so, I have examined the trial transcripts (of 600 pages) generated by the 4-day nonjury trial, as well as other relevant documents presented by the parties to buttress their respective arguments.

Initially, I would observe that I cannot agree with the Majority's determination that the trial court's allowance of the husband's charitable and business expenses, in calculating his net income, was error. There is evidence in the record that the law firm for whom the husband worked "expected" members of the firm to allocate a specific percentage of their salary for charitable purposes backed by the firm, and that the amount was automatically deducted from one's wages each pay period. As for the deductions allowed by the trial court for the husband's business entertainment and mileage, this could be attributed to the "cost of doing business".

To put the matter in perspective (and street parlance), the husband had to cater to the existing and prospective clients, and a means by which to create or perpetuate this business relationship was by expending money to entertain (be it in a social, political or charitable context). This is a factor which is more a reality than fantasy and is even granted credence by the allowance of such deductions by the Internal Revenue Service.[7] Thus, to the extent that the Majority would disapprove of the "operating" expenses incurred by the husband as a means of doing business, and, in turn, maintain or improve his position in the hierarchy of the law firm, I would allow the same as did the court below.

On the question of the trial court's failure to allocate the support order between spousal and child payments, the matter is resolvable given that the husband had offered (and the wife/appellant had agreed at one point in the case) to file a joint return. This would discount the negative tax consequences flowing from a non-allocable support order. However, as is so often the situation in domestic relations cases, the spurning of one spouse by the other generates such enmity between the two that little, if any, cooperation

7. See Publication 17 ("Your Federal Income Tax") of the Internal Revenue Service, which allows a contributor to deduct charitable contributions, subject to certain limits, made to a qualified organization. There was no indication at trial that the charities receiving money from the husband's firm were not "qualified organizations" under federal tax law. Thus, payments exacted from the husband by his law firm, as a matter of course from his wages, were properly allowed by the trial court as a legitimate expense (to preserve his position with the firm).

Also, the Internal Revenue Service allows deductions for entertainment expenses "incurred for the production of income", *Id.;* the husband's accounting that his attempt to endear himself to existing and prospective clients manifested itself in the form of lunches, banquets and the purchasing of various tickets for events sponsored or endorsed by the existing or prospective client warranted their deductibility.

Given that the Internal Revenue Service allows for the cost of such items in the form of deductions, I see no reason why the same should not apply in calculating one's net income for support purposes. There was no evidence proffered that the husband intentionally exposed himself to such expenses for the purpose of diminishing his "spendable" income, and, thus, painting a false financial picture in assessing his support obligations.

is forthcoming to ameliorate any of the (resolvable) problems, be they in the tax area or in the allocation of monies or resources.

To the extent that the court below may have erred in calculating various deductions (*e.g.*, mortgage payment), a remand is appropriate to rectify the mistabulation.

Lastly, I conclude, as did the trial court, that the wife/Nora Coffey is "employable". Her past work experience and *extensive* involvement in the HERS Foundation (established by Nora in 1978–79) prompts this writer to agree (as did the court below on the question of the credibility of the experts presented by both parties) that Nora Coffey does have skills that are transferrable to the market place. To say otherwise would be to ignore totally her educational and work background recounted with specificity in the trial court's opinion, not to mention the day-to-day involvement of Nora Coffey in the operation of the HERS Foundation as a counselor and the driving force as to its inception, perpetuation and ongoing annual conferences held by the Foundation.

I see no reason to disturb the trial court's credibility findings, a subject which is within the trial court's bailiwick and not to be disturbed where the record is supportive of its findings of fact and conclusions of law.

As this Court has done in the past, there is no reason to think that the appellant/wife, once she makes the effort to secure employment, and is either unsuccessful or the monies paid for the position obtained falls short of the trial court's estimated "earning capacity", to come back into court to seek a modification of the support order. See, *e.g.*, *Mazzei v. Mazzei* 331 Pa.Super. 432, 480 A.2d 1111 (1984). There is nothing in the law that would foreclose the wife from petitioning the court to review her employment effort and having the projected "earning capacity" assigned to her by the court altered premised on the reality of her attempt(s) to obtain a job. *Id.*

For the reasons herein stated, I respectfully concur in part and dissent in part to the actions of the Majority.