576 A.2d 1070

**Anthony S. ZULLO**

v.

**Patricia K. ZULLO, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 11, 1990.

Filed June 15, 1990.

Petition for Allowance of Appeal Granted
Sept. 7, 1990.

Charles E. Kurowski, Canonsburg, for appellant.

Christopher E. Miles, Washington, for appellee.

Before McEWEN, BECK and HUDOCK, JJ.

**BECK, Judge:**

This is an appeal from an order of the trial court terminating alimony payments as a result of the remarriage of the recipient wife. Appellant Patricia Zullo ("wife") argues that the trial court erred in terminating the alimony award because the payments she was receiving, although termed "alimony" in the divorce decree, were in reality reimbursement for a marital debt that her former husband owed her. Appellee Anthony Zullo ("husband") contends that the court's award was alimony despite the fact that it was designed solely to recompense wife for her assumption of the marital debt.

The trial court reasoned that both the language of the court order and the conduct of the parties established that the payments at issue were alimony payments which, by statute, must terminate at the remarriage of the recipient spouse.[1] We conclude that, under the circumstances of this case, the trial court's award was not "alimony" as understood in conventional terms and does not terminate upon the remarriage of the spouse entitled to it. Instead we find that the award was intended by the court and the parties to constitute repayment of a specific and identifiable debt owed to wife by her former husband, and does not terminate until the debt is repaid. The basis for repayment to the wife is equitable reimbursement, *Bold v. Bold,* 524 Pa. 487, 574 A.2d 552 (Pa.1990).

The parties were married for a relatively short period between 1981 and 1984. They had no children together. Wife entered the marriage with a $30,000 mortgage on her home. Her home became the marital residence although not marital property. During the course of their marriage, the parties accumulated joint liabilities of approximately $34,000. They had few marital assets. In November 1984, just after the parties separated, wife remortgaged her house in order to pay off the debts that the parties jointly accumulated during the marriage. At the time of the

---

1. The applicable law in the instant case is the 1980 Divorce Code. 23 Pa.Stat.Ann. § 501(e) (Purdon Supp.1987).

remortgaging, wife was employed by a bank from which she obtained the loan. The employer-bank deducted the loan payments directly from her paychecks. Wife consolidated and undertook the repayment of the marital debt in order to retain her credit rating and, ultimately, her job.

Husband filed a complaint in divorce in December 1984 seeking the entry of a divorce decree and also equitable distribution of real and personal property. Wife answered and counterclaimed seeking alimony and alimony pendente lite and alleging that: "[wife] lacks sufficient property to provide for her reasonable needs and is unable to support herself and make payment toward the joint obligations incurred by the parties" and that the "[wife] requires reasonable support to adequately maintain herself in accordance with the standard of living established during the marriage and to continue making the necessary payments on the parties joint obligations".

After proceedings before a master, the court ordered the husband to pay to wife alimony pendente lite in the amount of $200.00 per month "to assist her in the payment of the marital debt". When husband failed to make the alimony pendente lite payments, wife sought and obtained a court order attaching the Workmen's Compensation benefits owed to husband and ordering that they be paid directly to her. The wage attachment order remained in effect after the final divorce decree was entered.

In November 1986, the master submitted a final report. The master concluded, with respect to equitable distribution, that the "debts owed by the parties will be equally distributed between them, but for practical purposes, the Wife has been and will be responsible for making the majority of the payments on those debts." Further, with respect to the alimony award, the master concluded that:

[Wife] has paid the majority of the marital debts since the separation and will continue to do so until they are paid off.... There are insufficient amounts of marital property to assist the Wife in paying off the majority of the debts owed by the parties. Both Husband and Wife are

able to support themselves through appropriate employment, but each is unable to make all of the marital debt payments.... The wife is in a position where she must make the necessary mortgage payments and other payments so that the marital debt is eventually extinguished. It will be recommended that the Husband pay other similar marital debts and that is taken into consideration by the Master in his recommendation of alimony to be paid to the Wife. *As to their needs, under Section 501(b)(13), the parties are relatively equal except for the fact that the Wife will be making the substantial payments on the marital debts and, therefore, alimony payments by the Husband are necessary to rehabilitate the Wife's financial position and to allow the marital debts to be extinguished.* Both parties have the ability to make equal contributions to the payment of marital debt. *The alimony payment* as recommended by the Master is made not for the purpose of educating or rehabilitating the Wife as noted in Section 501(b)(9) but *is made for the purpose of both parties contributing to the payment of the marital debts.* This contribution by the Husband to the Wife and the payment by the Wife of the majority of the marital debts will allow both parties to be placed in the same position in which they entered the marriage. The award of alimony should be considered for the period of time it will take for the parties to extinguish the marital debt. (emphasis added).

Both parties filed exceptions to the Master's report and recommendations. In April 1987, the court entered a decree of divorce. The accompanying order mandated that "Husband shall pay to the Wife the sum of $300.00 per month alimony to assist her in extinguishing the marital debt for a period of forty-eight (48) months for a total amount due to the Wife of $14,400.00.".

In September 1987, husband sought a reduction in alimony payments based upon an alleged change of circumstances. At the same time husband sought to terminate the wage attachment order which was still in effect. Hus-

band's motion was denied. Husband again sought termination of his alimony payments because wife had sold the residence and repaid the mortgage which she originally had undertaken to consolidate and pay off the marital debt. Again the court denied the motion.[2]

Finally, in February 1989, husband sought termination of alimony based on the remarriage of wife. In addition, he sought termination of the wage attachment order and reimbursement for any payments made to wife since her remarriage in September 1988. The trial court found that both the "clear acceptance by the parties that the payments were in fact alimony and the unambiguous provisions of the statute" required him to terminate alimony payments to wife. Wife appeals the court's order terminating the award.

Wife contends that the statutory provision which requires the termination of alimony awards upon the remarriage of the recipient spouse should not operate automatically to terminate the award in her case because she "was not receiving support through alimony but ... was receiving a repayment of marital debts created during the marriage ...". Husband on the other hand argues that the court and the parties treated the award as "alimony" and that wife's decision to remarry terminates the award automatically by operation of statute. He asserts that the reasons underlying the "alimony" award are irrelevant.

In the instant case it is clear and undisputed that the amount and duration of the "alimony" award recommended by the master and ordered by the court were directly determined by the economic situation created when the wife undertook unilaterally to pay off the marital debt. No marital assets were available from which to deduct the

2. Each time husband sought a reduction or termination of alimony payments based on a change of circumstances, wife argued that the changes were irrelevant because the "alimony" was solely for the repayment of a finite, previously owed debt and was not based on her need for support in a traditional alimony context. Then, as now, she contended that the amount owed to her by husband is unaltered by changing circumstances.

husband's share of this joint indebtedness. Therefore, the remedy employed by the court in its attempt to obligate the husband for his share of the debt was the award of payments to the wife which the court denominated "alimony". In effect what the trial court constructed was an installment repayment plan whereby husband would pay to wife his share of the marital debt. The fact that this payment was called "alimony" does not change its essential nature.

■ Although the master and the trial court labelled the payments to the wife "alimony", this court's inquiry is not limited by the label placed on the award. Where the label is clearly artificial, we look to the underlying purpose that the award sought to achieve. We find the recent Supreme Court opinion in *Bold v. Bold, supra,* instructive. The *Bold* court reviewed an award designed to compensate a spouse who had supported her marital partner while the latter was in school. In *Bold,* the master denominated the monetary award "reimbursement alimony", while the trial court called it "equitable reimbursement". In approving the award the Supreme Court cautioned against placing too much emphasis on the label used. Instead, the court emphasized that its primary interest was "in effecting fairness between the parties". *Bold,* 574 A.2d at 555. Therefore, the Supreme Court warned that: "Ultimately, the only criterion for fashioning the award under either analysis is fairness." *Id.* at 556–557 n. 7.

■ It is apparent that the award in this case was not alimony as conventionally conceived. Alimony can and does serve many functions, but fundamental to its definition is the notion of "support". By furnishing support to the recipient spouse the court seeks to mitigate the economic harm that divorce (and the concomitant dissolution of the spousal support obligation) has on a dependant and economically disadvantaged spouse. Typically, the decision regarding whether and to what degree alimony should be ordered requires an assessment, *inter alia,* of the needs and capabilities of the recipient and a consideration of those factors which might impede the recipient spouse's future economic

independence. *See, e.g., Verdile v. Verdile,* 370 Pa.Super. 475, 536 A.2d 1364 (1988); *Pacella v. Pacella,* 342 Pa.Super. 178, 492 A.2d 707 (1985); *Hess v. Hess,* 327 Pa.Super. 279, 475 A.2d 796 (1984); *Ruth v. Ruth,* 316 Pa.Super. 282, 462 A.2d 1351 (1983).

■ Except for the assumption of the marital debt by wife, the parties were equally self-supporting and employable. Neither party needed the "support" of the other to develop or enhance an employable skill, to achieve economic parity, or to maintain a particular standard of living. The *sole* reason that the court granted wife "alimony" was to collect husband's share of the marital debt. The amount of the so-called alimony was not based on a determination of the recipient's reasonable needs nor was the duration of the award linked to any period of time necessary to allow her to become economically self-sufficient. Instead, the award was fixed by calculating the total marital debt, subtracting those amounts which were present prior to the marriage or which were assumed by the husband, and dividing the remainder to arrive at husband's fair share. Since wife had already undertaken repayment of almost the entire debt, husband's "alimony" payments were to last only as long as necessary to reimburse her for his share of their liabilities. The duration of the award was just long enough for the amount of the debt to be discharged, i.e. forty-eight months at $300 per month, for a total of $14,400.

We find instructive the career threshold cases wherein one spouse supports the other to enable the latter to pursue an academic or professional degree. As in the instant case, in the career-threshold cases, at the time of the dissolution of the marriage, the parties have few marital assets because the party being educated is at the threshold of his or her career. During the marriage one spouse undertook to finance the ongoing obligations of the marriage while the other spouse pursued educational goals. When the marriage is dissolved fairness requires that some form of financial reimbursement be awarded to the supporting spouse who has helped enhance the earning capacity of the

other spouse. Under the Divorce Code of 1980 with its restrictive alimony provisions [3] many supporting spouses were ineligible for alimony because they did not fit within the conventional definition of a spouse entitled to alimony. Our courts have struggled to do equity in these situations. The supporting spouse has frequently sought compensation through "reimbursement" alimony.[4] Until recently, our courts have shown reluctance to recompense the supporting spouse through "reimbursement alimony" or on any other theory.[5] Our Supreme Court has now broken new ground

3. Prior to 1988, alimony was available only to those who lacked sufficient property or income to provide for his or her reasonable needs and who could not be self-supporting through appropriate employment. 23 Pa.Stat.Ann. § 501(a)(1) and (2) (Purdon Supp. 1987). Courts tended to give a restrictive interpretation to alimony awards, insisting that the statute meant for alimony to be strictly "rehabilitative". However, it was always acknowledged that, in specific cases, economic justice could only be achieved through a grant of long-term or even permanent alimony. This was particularly true when the court found that the dependent spouse was hampered by "compelling impediments to gainful employment." *See Pacella v. Pacella, supra; Mazzei v. Mazzei,* 331 Pa.Super. 432, 480 A.2d 1111 (1984); *Eck v. Eck,* 327 Pa.Super. 334, 475 A.2d 825 (1984). *See also Dyer v. Dyer,* 370 Pa.Super. 377, 536 A.2d 453 (1988). In 1988, the legislature eliminated from the Divorce Code the prerequisite that alimony could be granted only if the party seeking it could not meet his reasonable needs through sufficient distribution of property nor support himself through appropriate employment. Now our courts are directed to allow alimony "as it deems reasonable, to either party, only if it finds that alimony is necessary". 23 Pa.Stat.Ann § 501(a) (Purdon Supp.1989). Necessity is the only requirement in determining the propriety of an alimony award and that necessity is judged by numerous considerations only some of which have to do with the rehabilitation of the recipient spouse. Moreover, the duration of the alimony award is now limited only by what the court deems reasonable under the circumstances, thus eliminating any legislative mandate to link the term of alimony to such time as the recipient becomes gainfully employed. 23 Pa.Stat.Ann. § 501(c) (Purdon Supp.1989).

4. *See Bold v. Bold,* 524 Pa. 487, 574 A.2d 552 (1990), *reversing,* 374 Pa.Super. 317, 542 A.2d 1374 (1988); *Hodge v. Hodge,* 513 Pa. 264, 520 A.2d 15 (1986); *Lehmicke v. Lehmicke,* 339 Pa.Super. 559, 489 A.2d 782 (1985).

5. New Jersey has long endorsed the concept of "reimbursement alimony" in cases where it would be "patently unfair" to leave the supporting spouse with nothing while the supported spouse "keeps not only the degree, but also all the financial and material rewards flowing from it". *Mahoney v. Mahoney,* 91 N.J. 488, 453 A.2d 527 (1982); *Reiss v. Reiss,* 195 N.J.Super. 150, 478 A.2d 441 (1984), *judgment affirmed in part and remanded,* 205 N.J.Super. 41, 500 A.2d 24 (1985).

in creating a fair and equitable solution in the career-threshold cases. In *Bold v. Bold, supra,* the court endorsed the concept of equitable reimbursement to a spouse whose financial contributions to the education, training or increased earning capacity of the other spouse exceeded bare minimum support requirements and whose financial contribution had not yet been recouped through the marriage or otherwise.[6] Further, the court concluded that where there is insufficient marital property available for distribution to reimburse the supporting spouse, cash payments of "equitable reimbursement" can be awarded in the discretion of the trial court. *Bold,* 574 A.2d at 556–57.

Similarly, in the instant case, the trial court accomplished through the vehicle of "alimony" what was actually reimbursement to wife of an outstanding debt owed to her by husband. Although the court labelled the payments alimony, they had, in fact, none of its conventional attributes and were instead the equitable reimbursement of the debt husband owed to the wife.

Having determined that the trial court's award was equitable reimbursement and not alimony despite the label the court applied, we further conclude that the court's award need not terminate upon wife's remarriage. As we have noted above, alimony is conventionally designed to constitute post-divorce spousal *support.* Therefore, the remarriage of the recipient spouse acts to terminate alimony because the remarried spouse now shares a mutual duty of support with his or her new spouse. If it were otherwise the former spouse would be in the untenable position of supporting the present wife or husband of another person.

Moreover, the *Reiss* courts concluded that since "reimbursement alimony" is more in the nature of recoupment of an investment or a financial advance, it should not terminate upon remarriage in the same way conventional alimony does. *See also Smith v. Smith,* 224 N.J.Super. 559, 540 A.2d 1348 (1988).

6. In *Bold,* the wife's contributions were not directly to the husband's educational costs but were rather in the form of household support which the court found clearly subsidized husband's educational enterprise.

By contrast, however, the award in the instant case has nothing to do with support. Its underlying basis is payment of a debt not support. Certainly, under these circumstances, remarriage of the recipient does not absolve the debtor from repayment of the specific sums owed. In our view, wife should not be denied full reimbursement of the money owed her by husband simply because she remarried. The alimony section of the Divorce Code, Section 501, is not applicable.

■ A word of caution is in order. Usually, the appellate court will be bound by the labels the parties or the court applies to payments. The party challenging the accuracy of the label bears the burden of showing that the parties intended the payment to be something other than the label indicates.

■ Finally, we address the trial court's conclusion that wife cannot deny that the award was alimony because she sought enforcement through wage garnishment, which remedy would not have been available to her otherwise.[7] We do not view wife's application for wage garnishment as fatal to her cause. Again we stress, as did the Supreme Court in *Bold*, that notions of fairness and equity must prevail. Every action wife took in the course of the instant litigation was precipitated by husband's wrongful withholding of funds owed her. She was forced to assume the joint liabilities of her marriage because he made "little, or no, contribution toward the satisfaction of those debts". Trial Court opinion at 1. It was the husband's violation of the

7. We note that, despite the fact that 23 Pa.Stat.Ann. §§ 401(b) and (c) of the Divorce Code suggest that wage attachment is a remedy available to effect compliance with an order of equitable distribution, a section of the Judicial Code governing Judgments and Liens, 42 Pa.Stat.Ann. § 8127, enacted in 1982, specifically limited wage garnishment to "support" orders only. In *Laughlin v. Laughlin,* 372 Pa.Super. 24, 538 A.2d 927 (1988), this court held that § 8127 prevailed and that equitable distribution orders could not be enforced by attachment of wages. However, the amendments to the Divorce Code, § 401(k), enacted on February 12, 1988, specifically reaffirms the court's authority to attach wages to enforce an order of equitable distribution. It would appear, therefore, that *Laughlin* is no longer good law.

court order that forced her to seek enforcement through contempt and wage garnishment. It would be highly inequitable to penalize the wife because the trial court, relying on its own mischaracterization of the award, granted wage garnishment when husband refused to pay. In our view, the fact that wife obtained wage garnishment does not change the fundamental character of this award. We decline to use the equitable principle of estoppel to perpetuate an injustice against an innocent party.

Therefore, we reverse the trial court's order terminating the "alimony" award. We reinstate the award to wife with further directions to the trial court to ascertain the continued necessity of the wage garnishment order. The trial court is instructed to reinstate wage garnishment if it determines it is necessary.