## Bouder v. Cantu

*Ruby D. Weeks,* for plaintiff.
*P. Richard Wagner,* for defendant.

HESS, *J.,* October 22, 1991—The parties hereto were previously husband and wife and were divorced, by order of this court, on September 28, 1990. Prior to their divorce, the plaintiff and defendant entered into a property settlement agreement in which the wife gave up the right to obtain alimony and to receive a portion of her husband's retirement benefit in exchange for his agreement to assume sole responsibility for repayment of certain marital debts totalling more than $15,000. The wife agreed to take sole responsibility for remaining marital debt.

While the wife has lived up to her obligations under the agreement, the husband has not. Instead, on May 6, 1991, Mr. Cantu filed for bankruptcy seeking to be discharged from the very debts which he assumed pursuant to the parties' property settlement agreement. Now that the defendant has been successful in being relieved, by the Bankruptcy Court, of these various debts, several of the creditors involved are looking to the plaintiff for repayment. She has testified, credibly, that these debts are beyond her ability to pay.

One provision of the property settlement agreement of the parties provided that each waived whatever right they may "have against the other for alimony." We are being asked by the plaintiff to use our broad powers under the divorce code to set aside this waiver and to direct that the defendant pay alimony to the plaintiff so that she, in turn, may pay the debts upon which the defendant has defaulted. For the reasons which follow, we believe that the plaintiff is entitled to relief, though not precisely in the form it is sought.

By way of background, we briefly examine the question of whether the husband was entitled to a discharge of these debts in bankruptcy. The case which first directly dealt with this question is that of *Buccino v. Buccino,* 397 Pa. Super. 241, 580 A.2d 13 (1990). In that case, the parties were married while the husband was attending dentistry school and his wife was supporting the family. They were divorced a number of years later; the court finding that the wife had made substantial financial contributions to the husband's career development and potential earning capacity. The trial court recognized that the husband would not be in a position to pay alimony to his wife while attending school on a limited income. The court, therefore, awarded alimony to the wife to commence when the husband completed schooling. The court also ordered the husband to reimburse the wife one-half of the value of certain gifts from her parents and to repay the wife for certain debts which she had assumed. Approximately six months following the entry of the divorce decree, the husband filed a bankruptcy petition listing the wife as a creditor and seeking discharge of the liabilities imposed by the divorce decree. The Bankruptcy Court, thereafter, granted the wife's motion permitting the question of dischargeability of the husband's debts to be

the subject of state court action. The Court of Common Pleas of Susquehanna County, Pénnsylvania, then held that the debts were "necessary for the support and maintenance of wife and the couple's minor child" and were not dischargeable in bankruptcy.

On appeal, the matter was dealt with by Judge Beck writing for the Superior Court. Her opinion notes that state and federal courts share jurisdiction to decide the matter of dischargeability under section 523(a)(5) of the Bankruptcy Code. This section provides, in pertinent part:

"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .

"(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement, but not to the extent that . . .

"(b) such debt includes a liability designated as alimony, maintenance or support, unless such liability is actually in the nature of alimony, maintenance or support." *Id.* at 249, 580 A.2d at 17.

In *Buccino, supra*, the Superior Court conducts an analysis of the competing policies in the bankruptcy law. One is the "fresh start principle" which is basic to bankruptcy and the other is the congressional policy of giving first priority to the adequate financial maintenance of a debtor's children and ex-spouse. The court goes on to acknowledge the difficulty in distinguishing between property division and support obligations. After in depth analysis, Judge Beck concludes that the obligations in

*Buccino* were not subject to discharge in bankruptcy. Of relevance to the case sub judice is the following paragraph in *Buccino:*

"In *In re Sermersheim,* 97 B.R. 885, 893 (Bankr. N.D. Ohio 1989), the Bankruptcy Court determined the dischargeability of credit card obligations for which husband had agreed to hold wife harmless. The obligation by husband had been assumed in a separation agreement under a provision entitled 'Debts and Obligations.' Again, despite the nomenclature used and the form of the obligations, the Bankruptcy Court found that the wife's income was insufficient to meet her expenses and that wife was dependent for financial assistance on family and friends. Accordingly the court found that husband's payment of the credit card debts, while appearing to be the mere assumption of a marital liability, had the effect of providing necessary support and was excepted from discharge in bankruptcy. The same result is mandated here." *Id.* at 259, 580 A.2d at 22.

In light of the above language, it appears that marital debts, assumed by a party in a divorce action, particularly where there is no ability on the part of the other party to pay, constitute debts which are not dischargeable in bankruptcy.[1]

The question which we face directly, however, is not whether the marital debts assumed by the husband were properly dischargeable, but rather whether we can award alimony in light of the fact that certain debts may have been improperly discharged. The Divorce Code provides in section 3701(e) that remarriage of a party receiving alimony "terminates the award." In addition, section 3706 of the Divorce Code provides:

---

1. A similar result was reached most recently in the case of *Deichert v. Deichert,* 402 Pa. Super. 415, 587 A.2d 319 (1991).

"No petitioner is entitled to receive an award of alimony where the petitioner, subsequent to the divorce pursuant to which alimony is being sought, has entered into cohabitation with a person of the opposite sex who is not a member of the family of the petitioner within the degrees of consanguinity."

Not only has the former Mrs. Cantu "entered into cohabitation" with Mr. Bouder, she has, in fact, gone so far as to marry him. Nowhere is there, in section 3706, any reference to an exception to the bar to alimony where a former spouse defaults on an agreement to assume marital debt. The Divorce Code, in its other provisions, refers to the need to effectuate economic justice between the parties and grants the court broad equitable powers to achieve that end. Nonetheless, the clear wording of the statute prevents an award of alimony in the event that the proposed payee has become remarried. We are not at liberty to ignore the clear wording of the statute under the pretext of pursuing its spirit. 1 Pa.C.S. section 1921.

Again, however, our inquiry does not end here, for there is authority for the proposition that a court order to a former husband to repay marital debts assumed by a former wife is not "alimony," despite such a label given it by the court and parties. This matter was addressed in *Zullo v. Zullo,* 395 Pa. Super. 113, 576 A.2d 1070 (1990). In that case, the master had found that the needs of the parties were relatively equal except for the fact that the wife was the one making payments on the marital debts. The master determined that alimony payments by the husband were necessary to rehabilitate the wife's financial position and to allow the marital debts to be extinguished. The Court of Common Pleas, in entering a decree in divorce, directed that the "husband shall pay to the wife the sum of $300 per

month alimony to assist her in extinguishing the marital debt. . . ." *Id.* at 118, 572 A.2d at 1072. In *Zullo,* the husband sought termination of the award of alimony based on the remarriage of the wife. The Superior Court has determined that alimony payments ordered for the purpose of the reimbursement for payments on marital debt is not truly alimony. The court said, in pertinent part:

"In the instant case it is clear and undisputed that the amount and duration of the 'alimony' award recommended by the master and ordered by the court were directly determined by the economic situation created when the wife undertook unilaterally to pay off the marital debt. No marital assets were available from which to deduct the husband's share of this joint indebtedness. Therefore, the remedy employed by the court in its attempt to obligate the husband for his share of the debt was the award of payments to the wife which the court denominated 'alimony.' In effect what the trial court constructed was an installment repayment plan whereby husband would pay to wife his share of the marital debt. The fact that this payment was called 'alimony' does not change its essential nature. . . .

"The *sole* reason that the court granted wife 'alimony' was to collect husband's share of the marital debt. The amount of the so-called alimony was not based on a determination of the recipient's reasonable needs nor was the duration of the award linked to any period of time necessary to allow her to become economically self-sufficient. Instead, the award was fixed by calculating the total marital debt, subtracting those amounts which were present prior to the marriage or which were assumed by the husband, and dividing the remainder to arrive at husband's fair share. Since wife had already undertaken repayment of almost the entire debt, hus-

band's 'alimony' payments were to last only as long as necessary to reimburse her for his share of their liabilities. . . .

"[I]n the instant case, the trial court accomplished through the vehicle of 'alimony' what was actually reimbursement to wife of an outstanding debt owed to her by husband. Although the court labelled the payments alimony, they had, in fact, none of its conventional attributes and were instead the equitable reimbursement of the debt husband owed to the wife.

"Having determined that the trial court's award was equitable reimbursement and not alimony despite the label the court applied, we further conclude that the court's award need not terminate upon wife's remarriage." *Id.* at 119, 121, 123, 576 A.2d at 1073, 1075.

We therefore conclude that while we cannot order alimony, in light of Mrs. Bouder's remarriage, we do have the authority to direct Mr. Cantu to reimburse his wife to the extent that she has assumed marital debt. Even though our appellate courts have suggested that the names given to these payments are essentially unimportant,[2] we will, for the sake of future proceedings in this case, denominate the payments as "equitable reimbursement."

One concern in the instant matter is the possibility that we may direct payments from Mr. Cantu to Mrs. Bouder which payments are then, in turn, not used for the purpose intended; namely, the retirement of marital debt. *Zullo, supra,* the only case we have found which sanctions the procedural course on which we are about to embark, was a case in which the husband was directed to make payments to reimburse the wife for sums already paid by her.

2. *See Zulli, Id.* and also *Bold v. Bold,* 524 Pa. 487, 574 A.2d 552 (1990).

Our most recent hearing in this matter presents us with something of a catch-22 as Mrs. Bouder testified that she was unable to advance any payments with respect to the husband's share of marital debt, leading us to conclude, therefore, that there have been no payments made by her subject to reimbursement. Since the last hearing we have, by the vehicle of this opinion, brought the issues of the case into sharper focus. This having been accomplished, we will permit the parties another hearing to permit them to address the question of the extent to which the plaintiff has or will assume her ex-husband's share of marital debt and the manner in which it will be paid or reimbursement effectuated.

### ORDER

And now, October 22, 1991, consistent with our opinion filed of even date herewith, further hearing in the within matter is set for the December 6, 1991, at 10 a.m., in courtroom number 4, Cumberland County Courthouse, Carlisle, Pennsylvania.